[Crim. No. 173.   Second Appellate District.—March 17, 1911.]

## THE PEOPLE, Respondent, v. S. H. OVERACKER, Appellant.

CRIMINAL LAW—INFORMATION—ARRAIGNMENT—LIST OF WITNESSES.— It is held that the court did not err in denying the motion of the defendant charged by information with murder to set aside the information on the ground that the names of the witnesses for the prosecution taken at the preliminary examination were not indorsed thereon. The Penal Code does not require any list of such names to be indorsed or shown upon the information, or any copy thereof to be presented by the clerk to the defendant upon his arraignment.

ID.—CONSTRUCTION OF PENAL CODE—LIST OF WITNESSES ON ARRAIGNMENT—INDICTMENT.—The provision of section 988 of the Penal Code that when an arraignment is made it must include "reading the indictment or information to the defendant, and delivering to him a true copy thereof, and of the indorsements thereon, including the list of witnesses," is to be construed to mean that if the charge made is contained in an indictment, then the list of witnesses whose names are required by section 843 of the Penal Code to be shown on the indictment must be furnished to the defendant.

ID.—MURDER — SELF-DEFENSE — INTERRUPTION OF FLOW OF SURFACE WATER—PHYSICAL CONTOUR OF LAND—ERROR IN REJECTING EVIDENCE—RIGHTS OF DEFENDANT.—In a prosecution for murder, where defendant relied upon self-defense and on his right to be at the place where the shooting occurred, it was error to disallow a witness to prove the contour of the land of plaintiff and defendant at that place, and to reject proof that deceased erected an embankment on his lower land, which caused water which would otherwise flow through a natural depression on his lands to back over defendant's land, to the destruction of his crops.

ID.—RIGHT OF DEFENDANT TO ABATE PRIVATE NUISANCE.—If the deceased was maintaining a private nuisance on defendant's land, the defendant had the right to abate the same without committing a breach of the peace or doing unnecessary injury.

ID.—ERROR WITHOUT PREJUDICE—PROOF SUPPLIED.—Error in rejecting such evidence was without prejudice where defendant subsequently supplied the rejected proof, and a surveyor had testified as to the contour of the lands of defendant and deceased.

ID.—REPUTATION OF DECEASED FOR PEACE AND QUIET—CROSS-EXAMINATION—IMPROPER QUESTION ON RE-EXAMINATION.—Where a witness for defendant had testified that the reputation of the deceased for peace and quiet was bad, and had stated on cross-examination that he had discussed the matter with a person named, who told him of different troubles deceased had regarding water, and on re-examination had said he could not repeat what such person had said even in substance, the court properly sustained an objection to a further question on re-examination: "Did he say anything about Mr. Winn's having any trouble with other people?"

ID.—IMPROPER REMARK OF JUDGE—ADMONITION OF JURY—ERROR WITHOUT PREJUDICE.—A remark of the judge during the discussion of the objection to such improper question on re-examination of the witness that "if the witness has talked to others and cannot remember the names, it seems to me it is a very light class of evidence," was error without prejudice, where the jury was immediately admonished not to consider any remarks of counsel or of the court or any statement of the judge not given in the final instructions. It must be assumed that such admonition was heeded by the members of the jury.

ID.—IMPROPER EVIDENCE AS TO BAD REPUTATION OF DECEASED—CONVERSATION AFTER HOMICIDE—STRIKING OUT.—It is held that there was no error in striking out the evidence of a witness as to the bad reputation of deceased for peace and quiet, where the witness stated that he talked with no one about such reputation until after the homicide.

ID.—EVIDENCE OF COMMUNICATION OF THREATS OF DECEASED—QUESTION TOO BROAD—STRIKING OUT ANSWER.—It is held that an affirmative

answer to the question asked of defendant, "Were any of the threats made by Winn communicated to you?" was properly stricken out on the ground that the question included too much. The striking out was immaterial, where defendant was allowed to testify as to threats uttered by the deceased, which were communicated to him.

ID.—EVIDENCE OF PURPOSE OF SHOOTING DECEASED—IMPROPER STRIKING OUT—SELF-DEFENSE.—Where defendant, when asked why he shot the deceased, answered, "Because he drew his gun on me, and I had in mind his threat to exterminate my family, and I thought he was ready to start in on extermination," it was improper to strike out the last statement. Defendant was entitled to tell the jury what his state of mind was when he shot the deceased. If he believed that he stood in grave danger of death or great bodily injury at the hands of the deceased, and the fear was a reasonable one, under all the circumstances of the case, the plea of necessary self-defense would have been clearly sustained.

ID.—ERROR WITHOUT PREJUDICE.—But it is held that the error of the court in striking out such last statement was without prejudice, where defendant in telling the story of the shooting in the first instance, and speaking of the action of Winn, the deceased, said: "He raised his gun on me, jerked up quick. Then, of course, I supposed he meant to shoot me," since by this answer he sufficiently told the jury what his state of mind was, and the portion stricken out would be merely cumulative.

ID.—EVIDENCE AS TO MENTAL CONDITION OF DEFENDANT—INTIMATE ACQUAINTANCE OF WITNESSES—DISCRETION OF COURT.—In receiving evidence as to the mental condition of the deceased, the trial judge had discretion to determine whether the witnesses were intimate acquaintances of the defendant or not, where no plain abuse of such discretion is shown.

ID.—PROPER EXCLUSION OF REMOTE TESTIMONY.—The court had discretion to exclude testimony on the question of the mental condition of the defendant which was remote in point of time from the date of the homicide.

ID.—INSTRUCTIONS — PROPER REQUEST AS TO RIGHTS OF ADJACENT OWNERS—FLOW OF SURFACE WATER.—A requested instruction that "when two fields or pieces of land are adjacent, and one is lower than the other, the owner of the upper field has a natural easement to have the water that falls upon his land to flow off from the same upon the field below, which is charged with a corresponding servitude; and if you believe from the evidence that the land occupied by or belonging to Gustave A. Winn, deceased, was adjacent to and lower than the land of defendant Overacker, then you are instructed that the deceased Winn had no legal right to erect embankments, etc., whereby the natural flow of the surface water would be stopped, or in any way to obstruct the flow of the water from the land of the defendant," was proper.

ID.—ERROR WITHOUT PREJUDICE—INSTRUCTION AS TO SELF-DEFENSE.—
Any error in refusing to give such proper instruction was without
prejudice, where the jury were instructed, in effect, that however
they might resolve the circumstances of the case, and whatever their
finding may be upon questions of fact, if they believed that de-
fendant feared at the time he fired the fatal shots that he was
about to suffer death or great bodily injury at the hands of Winn,
he was justified in killing him as he did. It is held that this in-
struction assigned to defendant all the rights he would be entitled
to claim, assuming that he went upon the land of Winn on the morn-
ing of the tragedy rightfully.

ID.—REQUESTS AS TO RIGHT TO REMOVE OBSTRUCTIONS—OMISSION OF
STATUTORY QUALIFICATION—PROPER REFUSAL.—Requested instructions
as to the legal right of defendant to remove the obstructions placed
by deceased upon his land which prevented the surface water from
flowing away, and caused the water to overflow defendant's upper
land, which omitted the statutory qualification as to the right of
a person affected by a private nuisance to abate the same, when it
can be done "without committing a breach of the peace," as pro-
vided in section 3502 of the Civil Code, were properly refused. The
defendant should have furnished instructions correct and complete
in their declaration of the law, otherwise he cannot complain of their
rejection.

ID.—ERROR IN ALLOWING OPINION EVIDENCE OF PHYSICIAN — QUES-
TION OF SELF-DEFENSE—FUNCTION OF JURY.—It was prejudicial error
to allow a physician to state his opinion of the position of the body
of Winn in relation to the wound, which passed through his left arm
and body, that he must have stood with his left arm at his side.
That was not a proper subject of expert testimony, but was a ques-
tion of fact to be determined by the jury. It was prejudicial to
the defendant, who introduced evidence to show, in self-defense, that
the defendant had raised a gun with his left arm to aim at defend-
ant when he was shot.

APPEAL from a judgment of the Superior Court of Orange
County, and from an order denying a new trial. Z. B. West,
Judge.

The facts are stated in the opinion of the court.

Montgomery & Tarver, and Lecompte Davis, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy
Attorney General, for Respondent.

JAMES, J.—Defendant was convicted of the crime of mur-
der, and the jury, in the exercise of the discretion left to it,

fixed his punishment at imprisonment in the state prison for life. Judgment followed accordingly. Defendant appeals from the judgment, and from an order denying his motion for a new trial.

On the morning of January 13, 1910, defendant fired upon Gustavus A. Winn, a neighbor, with a rifle, inflicting wounds from the effects of which Winn died almost immediately. For a number of years prior to the tragedy the two men lived on adjoining ranches. The land of defendant was above the land of Winn, and the natural grade or fall was from the land of the former toward and upon the land of the latter. A depression, called by many of the witnesses a "slough," marked a watercourse extending upon and through the land of Winn, into which some portion at least of the surface and storm waters from the land of defendant had been accustomed to flow. It is difficult to ascertain from the record just what the course of this slough or drain was, as many of the witnesses referred to a map or diagram when testifying before the jury, and the points, lines and directions indicated by them are not shown in any way in the transcript of the testimony. Sufficient is shown, however, to make it clear that the general topography of the ground was as has been stated. At the time of the killing of Winn the feeling existing between the defendant and the former was not friendly; the men had not been friends for several years prior thereto. Their causes of difference were several, but the chief dispute was over the refusal of Winn to allow the storm and surface waters coming southward over the defendant's land to continue their flow down through the natural depression there located. This dispute was the immediate cause of the fatal affray which occurred on the morning of January 13th. For a long time prior thereto Winn had maintained banks inside of the line dividing his land from defendant's, and these obstructions, during the rainy season especially, so impeded the course of the water as to cause it to become impounded and "back up" over and upon defendant's land. On the day upon which Winn was killed, Overacker, the defendant, had gone across onto the deceased's land near the dividing line and with a shovel had made an opening in a bank situated thereon, in order to allow the water which was impounded to escape. Winn discovered him in the act of cutting the bank and drove him off from his (Winn's) land.

While driving him away Winn struck at him with a shovel, but did not succeed in hitting him. Defendant tripped and fell into the water as he was being struck at by Winn, and upon regaining his feet went on to his own house, and Winn retired from the scene after replacing the earth that defendant had removed from the bank or dike. Upon reaching his house defendant immediately prepared to return to the place where he had been at work. He got his rifle to take with him, and to his wife, who endeavored to dissuade him from his purpose, said that he was going to "protect himself." He returned to the line fence, where he laid his rifle down, and then crossed to the dike with his shovel and commenced again to throw out the earth to make an opening for the passage of the water. His wife had followed him and remained a short distance away, a silent witness to the tragedy which followed. Soon after the defendant had resumed his shoveling on the dike, Winn, the deceased, coming from the direction of his house, which was located farther to the south, started toward him. Up to this point there is no material conflict in the evidence as to the events occurring on that morning. Winn advanced toward and approached to within about seventy-five or eighty feet of the place where defendant was at work. Both defendant and his wife testified that Winn carried a gun. The wife of the deceased and his seventeen year old daughter testified that after the difficulty occurring earlier in the morning, when Winn struck at Overacker with a shovel, the former had come to the house and told them that Overacker had gone after a gun and for them to come out and witness that he did have a gun. They testified that deceased carried no gun, but that he carried a shovel. Other witnesses who observed the affray from distant points saw no gun in the hands of Winn. When Winn reached the point of nearness to Overacker as indicated, the defendant stopped digging, stepped over to where his rifle lay, picked up the firearm and opened fire upon Winn. After the first shot Winn turned partially or wholly about and started back toward his barn. One or two shots followed, when Winn dropped to the ground and died. Defendant then returned to his house and instructed his wife to telephone for a doctor and the sheriff. To the latter officer he shortly surrendered himself. The testimony of both defendant and his wife was that the deceased

15 Cal. App.—40

had a gun in his hands at the time he approached defendant, and that he drew this gun upon defendant before any shots were fired.   Whether or not Winn had a gun and did aim at defendant was a question for the jury to determine.   The contention of defendant was that he killed Winn in necessary self-defense.   There was testimony to the effect that Winn had said that he was going to keep after the "crackerjacks," meaning defendant's family, until he had exterminated them.   Defendant testified that when Winn drew the gun on him, he remembered the threat of Winn to exterminate his family and believed that he was about to be shot.   On behalf of defendant evidence was also introduced for the purpose of showing that Overacker was insane at the time he fired the fatal shot.

Defendant has assigned as errors a great number of the rulings of the trial court made during the course of the proceedings which resulted in his conviction.   The points urged will be considered in the order in which they are presented.

1. There was no error committed in denying the motion of defendant to set aside the information filed against him, on the ground that the names of the witnesses for the prosecution were not indorsed thereon.   Section 988 of the Penal Code provides that an arraignment is made by "reading the indictment or information to the defendant and delivering to him a true copy thereof, and of the indorsements thereon, including the list of witnesses."   This provision must be construed to mean that if the charge made is contained in an indictment, then the list of witnesses, whose names are, by section 943 of the Penal Code, required to be attached to an indictment, shall be furnished to the defendant.   The names of witnesses for the prosecution are not required to be indorsed upon an information.   Our supreme court has so held in the case of *People* v. *Neary*, 104 Cal. 377, [37 Pac. 943].

2. Error is assigned because of the ruling made sustaining the objection of the prosecution to a question asked of a witness as to the natural course of drainage of the lands at and about the place where the shooting occurred.   Samuel Talbert was called as a witness by defendant and asked to point out on a map the course of the surface drainage, and replied (evidently pointing to the map) : "There is a natural slough running right down here across Mr. Winn's place to the county road.   It comes right down back of Mr. Winn's.   It

comes clear out to the county road." This question was then asked: "Q. How long have you known that natural drainage to be there?" An objection to the question was sustained by the court. Later, and while the same witness was under examination, counsel for defendant offered to show "that the natural drainage of the surface waters which fall upon the lands of Mr. Holyland, and particularly upon the land of the defendant, is in a southerly direction, and that there is a natural drain from the defendant's land upon and through the lands of Mr. G. A. Winn (the deceased), and we offer to show that Mr. Winn built an embankment so as to stop the natural drainage of the water, and that the stoppage of that natural drainage impounded the water upon Mr. Overacker's, the defendant's, land, and caused the same to be overflowed and his crops drowned out and perished." Upon objection again being made by the district attorney, the defendant was refused by the court leave to introduce this testimony. The testimony offered was competent and material. The defendant, in his effort to show that he acted in self-defense, was entitled to have the whole situation, as it tended to furnish a reason for his act in going upon the land of Winn on the morning of January 13th, or his right so to do, shown to the jury. As to which of the two men was the aggressor would depend, in some measure at least, upon the right possessed by each to be in the place where he was, at the time the encounter took place. If Winn was maintaining an unauthorized embankment upon his property which so obstructed the surface water as to prevent it from flowing in a natural way off from the land of his neighbor, and to cause it to become impounded and to overflow the defendant's land, the result of his act would amount to a private nuisance, which defendant would have the right to abate. "A person injured by a private nuisance may abate it by removing, or, if necessary, destroying the thing which constitutes the nuisance, without committing a breach of the peace, or doing unnecessary injury." (Civ. Code, sec. 3502.) The refusal of the court to allow defendant to show the things offered to be shown by the witness Talbert was error. And this error would appear to be of a highly prejudicial character, had not other testimony illustrating the physical contour of the same lands been allowed to be introduced and no evidence having been offered by the prosecution

in contradiction thereof. The defendant himself was allowed to testify very fully as to the course of the natural drainage from his land and through Winn's. Witness Charles R. Schenck, a surveyor, was also allowed to testify upon the same subject. It cannot, therefore, be said that the defendant was prejudiced by this ruling of the court.

3. An objection was sustained to a question asked by defendant's counsel of the witness Samuel Talbert on redirect examination. The question was this: "Q. In order that I may refresh your memory, did he say anything about Mr. Winn's having any trouble with other people?" The witness was here called to testify as to the general reputation of deceased for peace and quiet in the neighborhood in which he lived. He had testified that that reputation was bad. On cross-examination he stated that he had discussed Winn's reputation with a Mr. Farnsworth, who told him of different troubles Winn had had regarding water. On redirect examination he testified that he could not repeat, even in substance, what Farnsworth had said, and the question which was objected to then followed. There was no error in sustaining this objection. The witness had answered as fully as he was able, and had said that he could not, in substance even, tell what Farnsworth had said.

In a discussion occurring between the respective counsel and the court upon the objection last made, the trial judge remarked: "If the witness has talked to others and cannot remember the names, it seems to me it is a very light class of evidence." Exception was taken by defendant to the language of the court. No doubt the remark, which in effect was an expression of the opinion of the court as to the weight of the testimony, and therefore improper to be made, was inadvertently uttered, for the trial judge immediately admonished the jury that it was not to consider any remarks of counsel or the court, or any statement of the judge not given in the final instructions. This admonition, we must assume, was heeded by the members of the jury, and was effective to clear their minds of any prejudicial effect that the court's words might otherwise have had.

4. There was no error in striking out the testimony of the witness Page as to the general reputation of the deceased for peace and quiet. This witness stated that he had talked with

no one until after the tragedy regarding the reputation of Winn for the traits mentioned. Neither was it error to strike out the affirmative answer of the defendant Overacker to the following question: "Q. Were any of the threats made by Winn communicated to you?" The question included too much. The witness might have been asked properly what threats were communicated to him, and defendant might have followed this testimony up, or preceded it, by showing that such threats were actually made by Winn. Moreover, the defendant was allowed to testify at other points in his examination as to threats shown to have been uttered by Winn which were communicated to him.

It was error for the court to strike out from the answer of defendant, when asked why he shot deceased, the words, "I thought he was ready to start in on the extermination." The entire answer of the witness was as follows: "A. Because he drawed his gun on me and I had in mind his threat to exterminate my family, and I thought he was ready to start in on the extermination." Defendant was entitled to tell the jury what his state of mind was at the time he shot deceased. If he believed that he stood in grave danger of suffering death or great bodily injury at the hands of the deceased, and that fear was a reasonable one under all of the circumstances of the case, his plea of necessary self-defense would have been clearly sustained. The jury could get no picture of the operations of defendant's mind unless he told them of his fears, his beliefs and his mental anxiety and the reasons for them. Knowing all of these things, then the jury would have furnished it various of the quantities which it was its duty to weigh in determining whether the defendant acted as a reasonable man might have acted under all the circumstances of the case. But by referring to other testimony given by defendant, sufficient is found to relieve the action of the court in striking out this testimony of prejudicial effect. The defendant in telling the story of the shooting in the first instance, and speaking of the action of Winn, said: "He [Winn] raised his gun on me, jerked it up quick. Then, of course, I supposed he meant to shoot me." By this answer he sufficiently told the jury what his state of mind was, and in that view the portion of the answer referred to which was stricken out by the court would be merely cumulative.

5. Prejudice to the substantial rights of defendant is claimed by reason of a number of other rulings of the trial judge made on the admissibility of evidence as to the mental condition of the defendant. In all of the instances where testimony as to the opinion of witnesses was asked to be given on the question of the sanity of the defendant and ruled out, whatever may be our opinion as to the competency of such testimony as judged from the written record, it is sufficient to say that the trial judge had the discretion to determine whether the witnesses were intimate acquaintances of defendant or not, and that no plain abuse of that discretion is shown. (*Estate of Carpenter,* 94 Cal. 416, [29 Pac. 1101] ; *People* v. *Barthleman,* 120 Cal. 14, [52 Pac. 112] ; *People* v. *Lane,* 101 Cal. 516, [36 Pac. 16] ; *People* v. *Schmitt,* 106 Cal. 52, [39 Pac. 204].) Admitting it to be allowable and competent for witnesses not intimate acquaintances to describe the appearances, actions and conduct generally of a person whose sanity is questioned, no prejudicial error resulted from the refusal of the court to allow the testimony touching such matters, and found mainly in the depositions of witnesses residing in other counties, to be introduced. These witnesses had known defendant at varying times during ten to twenty years prior to the date of the shooting of Winn; they had not known him for a long series of years immediately prior to the tragedy. The court had discretion to exclude testimony which was remote in point of time from the date of the homicide. (*People* v. *Cord,* 157 Cal. 565, [108 Pac. 511].)

Other alleged errors occasioned by the admission or rejection of testimony are assigned, but a close and careful examination of the record does not disclose any prejudice to have been worked defendant by reason of any of these rulings, and they may be thus briefly dismissed. There are two remaining questions, however, demanding serious consideration. They are: 1. The failure of the court to instruct the jury as to the right of a land owner to have surface water falling upon his land follow its natural course in escaping, even though it run upon and over the land of his neighbor. 2. The ruling of the court in admitting, over the objection of defendant, testimony of a physician wherein the witness said that at the time the first shot was fired the deceased was

standing with his left side toward the person shooting at him and with his hand by his side.

6. The court refused to give to the jury the following instruction offered by defendant: "You are instructed that when two fields, or pieces of land, are adjacent, and one is lower than the other, the owner of the upper field has a natural easement to have the water that falls upon his land flow off from the same upon the field below, which is charged with a corresponding servitude, and if you believe from the evidence that the land occupied by or belonging to Gustavus A. Winn, deceased, was adjacent to and lower than the land of the defendant Overacker, then you are instructed that the land belonging to or occupied by Winn was subject to all the natural flow of water from the land of the defendant, and that the deceased Winn had no legal right to erect embankments, dikes, dams, or levees, whereby the natural flow of the surface water from the land of defendant would be stopped, or in any way to obstruct the flow of said water from the land of the defendant." This instruction correctly stated the law defining the rights of adjacent land owners on the subject of which it treated. It might well have been given. As to whether or not its refusal was rendered harmless depends altogether upon the scope of other instructions which the court did submit to the jury. Among other instructions given by the court was the following: "If you find that at the time the defendant fired the fatal shot that killed the deceased he was being violently attacked by the deceased, and that the circumstances were sufficient to excite the fears of a reasonable man that he was about to suffer death or great bodily harm at the hands of the deceased, and that the defendant acted under the influence of such fears alone, then you must acquit the defendant." By this instruction the jury was told, in effect, that however they might resolve the circumstances of the case, that whatever their finding might be upon the questions of fact, that if they believed that defendant feared at the time he fired the fatal shots that he was about to suffer death or great bodily injury at the hands of Winn, he was justified in killing him as he did. This instruction assigned to defendant all of the rights he would be entitled to claim, assuming that he went upon the land of Winn on the morning of the tragedy rightfully. The giving of it seems to save the refusal of the court

to give the first instruction quoted from having a prejudicial effect. It would have been better, however, after evidence had been admitted showing the course of the storm water upon the lands of the defendant and the deceased, and the various obstructions placed in its way by deceased, to have told the jury what the rights of the respective land owners were, so that the jury might have had a measure to which to apply the evidence in making up their conclusions on the question as to whether or not defendant acted in necessary self-defense. The view we have taken is adopted with less reluctance than it would have been had the instructions offered by defendant, following that which we have first quoted, made a complete and correct definition of defendant's rights under the facts therein assumed. Instructions numbered 72 and 73 were to the effect that if Winn, the deceased, erected embankments which caused the surface water falling upon defendant's land to become obstructed and prevented it from flowing away, and that defendant at the time of the deadly encounter was endeavoring to remove the obstruction, he was acting within his legal rights. These instructions omitted the important qualification found in section 3502 of the Civil Code, which gives the right to a person affected by a private nuisance to abate it, where he can do so "without committing a breach of the peace." The defendant should have furnished instructions correct and complete in their declaration of the law. Otherwise he cannot complain of their rejection.

7. The court erred to the prejudice of the rights of the defendant in admitting testimony given by Dr. Charles D. Ball. This witness, a physician, had seen nothing of the encounter between Overacker and Winn. He performed a post-mortem examination upon the body of Winn and traced the course of the several bullets which entered it. Defendant and his wife had both testified that deceased had a gun, and that he drew it upon defendant before defendant opened fire upon him. Dr. Ball was asked by the district attorney the following question: "Q. I will ask you, Doctor, what position must G. A. Winn have been in in relation to the one who fired the shot when he was shot through the left arm and side?" This question touched a matter vital to defendant under his plea of self-defense. It called for a description of the position of the deceased's body when the shot was fired which entered

his left arm, and was not a proper subject of expert testimony. Against an objection of defendant, the witness was allowed to answer the question, which he did saying: "A. Mr. Winn had his left side toward Mr. Overacker, with his left hand by his side, when he received the bullet that struck him first." There was no motion to strike out any portion of the answer. The latter portion thereof, to wit, "the bullet that struck him first," may not have been directly responsive, and by the failure of defendant to move to strike it out he waived complaint of that statement. Not so, however, as to those portions which were responsive to the question. The witness' reply was directly responsive when he said: "Mr. Winn had his left side toward Mr. Overacker, with his left hand by his side." That the matter upon which the witness was being examined was not proper to be proved by opinion evidence is established in the following cases: *People* v. *Westlake,* 62 Cal. 309; *People* v. *Farley,* 124 Cal. 594, [57 Pac. 591]; *People* v. *Milner,* 122 Cal. 181, [54 Pac. 833]. In the case of *People* v. *Durrant,* 116 Cal. 217, [48 Pac. 85], it is said: "Where the ultimate conclusion is one to be reached by the jury itself from the facts before it, and the so-called expert evidence is allowed which presents to a jury a conclusion other than that to which they might have arrived, the admission of this improper evidence is tantamount to a declaration by the court that they may set aside their exclusive right of judging and accept the judgment of the expert." In the case under consideration the autopsy developed the fact that the bullet which entered the left arm and side, so entered the left arm midway between the elbow and shoulder joint, passed forward and a little upward, thence out of the arm near the arm-pit, and across and through the muscles of the left side of the chest and upward into the pectoral muscles. The question proposed to the expert comprehended an inquiry into the position of his body and its members at the time deceased was shot. The evidence as to what the autopsy revealed might have been received by the jury as confirmatory of defendant's statement that when the first shot was fired Winn had his gun drawn and aimed. It is possible that the left arm so employed might have received a bullet which would in its course have proceeded as in the manner shown by the autopsy, and the jury might have been warranted in so concluding. The

admission of the so-called expert evidence upon the question was, as said in the Durrant case, tantamount to a declaration by the court that the jury might accept such opinion to the exclusion of their own convictions based upon the evidentiary facts, and therein, in our opinion, lies the prejudicial character of the error.

Upon a retrial the court will doubtless be careful to see that the defendant's rights under his plea to the charge, especially in the particulars noticed in this opinion, are fully guarded and defined to the jury. While prejudice is not imputed because of several rulings made, we cannot refrain from suggesting that it would be better to avoid the ground for objection altogether, by permitting the theories under which defendant sought to have his defense established to be given full illustration to the jury, both by the evidence and in the instructions.

The judgment and order are reversed.

Allen, P. J., and Shaw, J., concurred.