[Crim. No. 2650.   First Dist., Div. One.   Dec. 21, 1950.]

THE PEOPLE, Respondent, v. WILLIAM B. SULLIVAN, Appellant.

William B. Sullivan, in pro per., for Appellant.

Fred N. Howser, Attorney General, Clarence A. Linn and William M. Bennett, Deputy Attorneys General, for Respondent.

WOOD (Fred B.), J.—Defendant appeals from the judgment rendered upon a verdict convicting him of the crime of rape, and from an order denying his motion for a new trial.

Appellant assigns as error: (1) Insufficiency of the evidence to support the verdict, (2) improper admission of evidence of another alleged offense, (3) errors of law occurring during the trial, (4) prior jeopardy, and (5) that he was prosecuted by information instead of indictment, and the names of witnesses were not endorsed upon the information.

[1] Our examination of the record demonstrates that the evidence supports the verdict. It appears that R. W., the complaining witness, met defendant at a dance studio. He introduced himself as Bill Murphy. Three days later he telephoned her and arranged for a date the following evening, March 29, 1949. He called for her on the 29th in a two-door 1933 Plymouth sedan. She entered the car through the driver's door because the other door was broken. On the way from her home to a certain restaurant, defendant offered her a drink from a whisky bottle which he was carrying. She refused the drink but he took one. At the restaurant they both ate, and defendant had another drink. They left the restaurant and drove to a tavern on the Bayshore Highway. On the way defendant offered her another drink from the bottle which he was carrying. She refused, but he took a drink. At the tavern they danced, and defendant had several more drinks. She drank no alcoholic beverages. They left the tavern shortly after 10 o'clock p. m., and she asked him to drive her home. Instead, he drove her to McLaren Park, parked the car and told her she was going to be raped and that she might as well relax and enjoy it. She told him that she did not want to be raped, whereupon defendant ripped off one of her undergarments. She screamed, and defendant struck her repeatedly in the face with his fist. During part of the time which followed, she was dazed and unconscious. Defendant dragged her into the back seat of the car, and every time thereafter that she started to scream or hit him he struck her in the face. He tore her stockings from her girdle, forced her legs apart and committed an act of sexual intercourse upon her. The act was accomplished without her consent.

Thereafter, defendant drove her home, and she got out through the driver's door. She went to bed, and the next morning was unable to report to work. That day she reported the incident to the San Francisco Police Department. Two evenings later, defendant telephoned R. W., and asked her for another date. She made a date with him for 8 o'clock that evening at her home. Defendant asked her whether the police were there and she answered "No." When defendant arrived, two members of the police department were present by prearrangement, and one of them recognized defendant as a man whom he had previously arrested on a rape charge, as "William Sullivan." Defendant claimed that he had come over to pay R. W. for her eyeglasses

which had been broken during their previous date, and denied raping her. The police officers inspected defendant's car and found that the right door would not open. On defendant's person they found a half pint of the same brand of whisky as that which defendant had been carrying on the previous Tuesday night and which he had offered R. W. while they were driving.

As against this evidence, appellant opposes his own testimony, claims that some of the evidence offered on behalf of the respondent was not wholly convincing, and asserts that the testimony of the complaining witness was not corroborated at every point by the testimony of the doctor who examined her on the day after the alleged commission of the offense. That relates to the weight of the evidence and the credibility of witnesses, which it was the function of the jury to determine. Their determination adversely to appellant may not be disturbed on appeal when, as here, there was evidence that amply supported the verdict.

The evidence of another offense came in through the testimony of one B. R., concerning a similar attack upon her about two months prior to the offense of which appellant was convicted herein. She met him on the evening of January 29, 1949, at a dance hall in Oakland, and had several dances with him. During the course of the evening, at intervals between dances, she had three drinks with him in a barroom near by. He offered to take her and her girl friend home to San Francisco in his car, and they left with him about a quarter to twelve. After returning her girl friend to her home, he started toward B. R.'s home. After they had gone a couple of blocks he offered her a drink from a flask he was carrying, but she refused. He then suggested they go to his apartment for a drink and she refused, insisting that she wanted to go home. He said he would not take her home and drove over to the Mission district, kept driving around and then started out Dolores Street, saying he would hit 19th Avenue out farther, which was in the direction of her home; while they were driving he again offered her a drink which she refused. They did not hit 19th Avenue. He kept driving until near Tanforan race track. She kept arguing and pleading with him and telling him she had to get home. Finally, he said he would take her home; he drank every once in a while; came to a place where he saw a sign that said "Sharp's Park"; drove a little farther, stopped the car, and

indicated his intentions. She reminded him he had given her his card, and cautioned him to desist. He then grabbed her and beat her with his fist while they were in the front seat. She struggled for a time, then got the car door open and slid onto the ground. He kept hitting her and forced her into the back seat. She was sick and felt faint and was fighting him as best she could. He pulled off her undergarments and had sexual intercourse with her. He then drove back to San Francisco. En route, he told her he would take her to his apartment. She protested as soon as they got back into the city. Later, he said he would take her home, and then changed his mind. When he slowed down at a street intersection she jumped out of the car, ran to a near-by filling station, the station attendant telephoned the police, she made a report to the police, and then went home.

The testimony of B. R. concerning the other offense was properly admitted. Appellant's conduct upon that occasion bore such similarity in significant respects to his conduct in connection with the crime charged herein as to indicate a general plan and that his conduct was directed by design. It was admissible for precisely the same reason that the testimony of R. W. concerning the offense herein charged was deemed admissible upon the trial of appellant for the offense concerning which B. R. testified herein, in *People* v. *Sullivan*, 96 Cal.App.2d 742 [216 P.2d 558]. The jury was properly instructed as to the limited scope and purpose of such testimony herein by an instruction the same in all material respects as the instruction given and approved in *People* v. *Sullivan*, *supra*, 96 Cal.App.2d 742, at page 745.

█ We have considered appellant's assignments of errors occurring at the trial and do not find that they present a basis for reversal of the judgment. He claims that the prosecution suppressed evidence by not introducing all of the available evidence, such as the testimony of the physician, Dr. Moran, who examined the complaining witness 10 to 12 hours after the alleged assault, and the testimony of the person who made laboratory tests of specimens taken at that examination. We find no error in that. Appellant knew of the existence of such evidence, and it does not appear that he could not have adduced it himself had he desired. In fact, he did put Dr. Moran on as a witness.

Appellant also claims error because one question asked by the district attorney of Dr. Moran, upon cross-examination, was not based wholly upon the evidence in the case. Ob-

jection upon that ground was made and sustained, whereupon appellant's counsel assigned the asking of the question as misconduct and requested the court to so assign it. In declining to do so, the court said, "I have sustained the objection," and in the instructions later given admonished the jury that if any counsel intimated by any of his questions that certain hinted facts were or were not true, they must disregard any such intimation and must not draw any inference from it. During oral argument after the evidence was in, the district attorney made one statement not wholly borne out by the evidence, to which appellant's counsel objected, stating his version of that phase of the testimony and proposing to read from the record. The court declined to permit such reading and said, "The jurors heard the testimony and they are the ones who will know what was testified to. . . . The jurors are the judges of the facts," and in the instructions told the jury they were exclusive judges of the facts and of the effect and value of the evidence, and that as to any statement made by counsel they must not regard such statement as evidence, save as to facts stipulated to by both parties or a fact admitted by a party.

Appellant also claims error in the allowance of the question asked of B. R. whether or not she was pregnant, asked over the objection that it called for the conclusion of the witness. It appears from the record that she was competent to answer the question. His other assignments of error occurring at the trial are equally without support in the record.

Appellant also assigns as error the denial of his motion to dismiss the action, upon the ground that he had been once in jeopardy, acquitted upon a prior trial because the judge improperly discharged the jury. We find no error in that regard. According to the affidavit tendered in support of the motion to dismiss, after the jury had been deliberating about five hours the judge called them into the courtroom and asked the forewoman if they had agreed on a verdict; she replied, "We have not" and that the jury stood "five to seven"; the judge asked the jury if they thought they could arrive at a verdict if sent back for further deliberation and the jurors, with the exception of the forewoman, answered "No," she answering "Yes," if they had further time to deliberate; the judge said the hour was getting late and he did not wish to keep the jury out any later; the

forewoman suggested "Put the matter over until Monday morning and when we convene, I am sure we can reach a verdict"; and thereupon the judge discharged the jury.

Appellant claims that a jury that has been discharged while deliberating on a verdict, unless all the members of the jury state they cannot agree, constitutes an acquittal; that the jury must send in word to the court that they cannot agree before they can be discharged.

This point is not well taken. The applicable statute is section 1140 of the Penal Code, which declares that except as otherwise provided by law the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties or "unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." This clearly commits to the trial judge, not to the jury, the determination of the question whether or not "there is no reasonable probability that the jury can agree." The statute does not say, nor have we found any judicial decision construing the statute which holds that the judge may not determine that there is no reasonable probability that the jury can agree if one of the jurymen expresses a different view. As stated by the Supreme Court in *People* v. *Greene,* 100 Cal. 140, at page 142 [34 P. 630] : "The reasons upon which the court deems it proper to discharge the jury are not required to be placed on record; it is sufficient that it shows the jury were unable to agree. The judge is not bound to take as final the statement of the jury that they cannot agree upon a verdict, but when such a statement is made, the court below, familiar with the nature of the evidence, and probably the temperaments of the men who compose the jury, is better qualified to say whether there is a reasonable probability of an agreement than the appellate court; certainly the latter ought not to interfere with the ruling, except in cases of clear abuse of discretion."

The same reasoning applies here. The judge who presided at the former trial had before him an expression of opinion upon the part of all but one of the jurors that the jury could not agree upon a verdict. In addition, he was familiar with the nature of the evidence and doubtless with the temperaments of the persons who composed the jury, and thus was qualified to determine that there was no reasonable probability of an agreement. His discharge of the jury under

those circumstances did not constitute an acquittal, nor furnish appellant a basis for dismissal of the present action upon the asserted ground of his having been once in jeopardy.

 Appellant's points that it was incompetent to prosecute his case by information and that the names of witnesses should have been endorsed upon the information are not well taken. The state Constitution authorizes prosecution by information (art. I, § 8) and is implemented by the Penal Code, section 809 of which prescribes the form of the information. This procedure is not in contravention of the federal Constitution. (*Hurtado* v. *California,* 110 U.S. 516 [4 S.Ct. 111, 292, 28 L.Ed. 232].) There is no requirement that the names of witnesses be endorsed upon the information. The requirement of section 943 of the Penal Code that the names of witnesses be inserted at the foot of an indictment or be endorsed thereon before presentation to a court has no application to an information. (See *People* v. *Neary,* 104 Cal. 373, 377 [37 P. 943], and *People* v. *Overacker,* 15 Cal. App. 620, 626 [115 P. 756].)

The judgment and order appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.