[Crim. No. 18470. Second Dist., Dist. Four. Mar. 23, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK L. LOVELY, Defendant and Appellant.

## COUNSEL

Cornelia Shuford, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Russell Iungerich, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON, J.**—Defendant was charged with assault with a deadly weapon, in violation of section 245 of the Penal Code. On January 20, 1970, a jury trial commenced. At the close of the trial, during the jury's deliberation, the jury at its request was returned to the jury box for the reading of one witness' testimony and for the re-reading of jury instructions. The jury was then retired for further deliberation. On January 23 the jury sent a note to the court stating they were a "hung jury." The court ordered the jury returned to the jury box and inquired whether or not it was a hung jury. The jury as a group stated that it was hopelessly hung. Whereupon, the court declared the trial a mistrial, excused the jury and reset the case for a jury trial.

On January 29, 1970, at the commencement of the retrial of the case, defendant filed a "once in jeopardy" notice. On January 30, defendant's plea of once in jeopardy was denied. The jury returned its verdict of guilty as charged.

Defendant's motion for new trial and probation were denied and defendant was sent to state prison for the term prescribed by law.

Defendant appeals from the judgment of conviction.

On November 4, 1969, Norman Heath was employed by the El Rey Hotel as security guard. He first noticed defendant at the clerk's desk when the hotel clerk told him to usher defendant out of the hotel to get some fresh air. He thereupon took defendant by the arm and started walking defendant toward the front door a distance of approximately 60 feet. As they reached the door defendant pulled Mr. Heath off balance and struck him a couple of

times in the back. Someone called, "He's got a knife" and with that defendant disappeared on Sixth Street. Mr. Heath had a night stick strapped across his shoulder, but used it only after he was stabbed by defendant. He was promptly taken to the receiving hospital and thereafter to General Hospital where he remained for eight days for treatment of serious knife wounds.

Heath received the following injuries from defendant's stabs or cuts: approximately 11-inch cut from the navel to the mid-chest area; a cut under the right arm to the lower mid-back area to the left of the spinal column, which cut or stab wound caused a ruptured spleen. It was necessary for his spleen to be removed.

Jim Brown, an employee of the El Rey Hotel was in the hotel lobby on November 4. He noticed defendant at the desk creating a disturbance and he observed Mr. Heath escorting defendant toward the front door. He also observed defendant "going into his pocket and pulling something out." He called to Heath that defendant "had a knife" and it was then that defendant hit Heath with his elbow, knocking him off balance. As Heath's back was turned to defendant, Heath was struck by defendant who attacked him with a knife making several striking motions. Jim Brown testified that after he was wounded Heath got his night stick off his shoulder and struck at defendant as defendant was running from the scene. Heath did not strike defendant before he was stabbed. Heath went over to the stairs and sat down to wait for the ambulance.

Dr. Fulvio Serafini was on duty at the receiving hospital when Mr. Heath was brought in. The doctor observed two stab wounds, one on the right axilla (shoulder) region and the other on the left thoraxo-lumbar junction (lower left back).

Defendant testified in his own behalf. He said that he had lived at the El Rey Hotel since 1960. On November 4, 1969, he was passing through the hotel lobby, and going out to the store to get some matches. He had his hat on and was carrying a walking stick. Mr. Heath approached him and asked where he lived. He responded that he lived at the hotel in room 230. Mr. Heath asked for his key and told defendant that he must either check the key in or give it to him. Mr. Heath tried to take the key out of his hand and when defendant refused, Heath took his night stick from his shoulder strap and began hitting defendant with it. He thereafter pushed defendant towards the front door giving him "the bum's rush" and continued to hit him about the head and shoulders with the night stick. As the two men struggled towards the front door, defendant got a knife from his pocket. Heath was facing him as defendant stabbed Heath. Defendant

was not sure that he struck Heath in the stomach, but he was sure that he did not stab him in the back. Defendant walked from the scene of the fracas and then ran down Sixth Street.

Defendant contends that he was placed in double jeopardy by a second trial after the first trial ended in a hung jury. We find no merit in this contention. Before a mistrial was declared by the court in the first trial, the following proceedings were had:

"THE COURT: Let the record show defendant is present with counsel and Deputy District Attorney, Mr. Traeger. Twelve jurors are present in the box and the alternative juror.

"I have received a note which we will mark Court's Exhibit 3 which reads: 'We all find the defendant guilty but cannot agree on assault charges or felony.

" '1/23/70, L.J. Terrell.'

"We will have this note sealed after conclusion of the proceedings. Mr. Terrell?

"The jury foreman answered: 'Yes, sir.'

"THE COURT: Are you the foreman of the jury?

"MR. TERRELL: Yes, sir.

"THE COURT: I am going to ask you several questions, Mr. Terrell, and please answer yes or no. If you follow my questions I am sure you will understand.

"As a jury, have you taken more than one ballot?

"MR. TERRELL: Yes, sir.

"THE COURT: How many ballots have you taken?

"MR. TERRELL: We have taken several oral ballots and we have taken two written ballots.

"THE COURT: All right. Now, between the time of the last ballot and the previous ballot to that—in other words, the last two ballots you took, whether oral or written—did the numerical standing, without telling me what the standing was now—did the numerical standing change?

"MR. TERRELL: No.

"THE COURT: Did it change between the last two and the previous one, or the three last?

"Mr. Terrell: They changed.

"The Court: Did it change in a significant way?

"Mr. Terrell: No, sir.

"The Court: That is, by more than one or two ballots?

"Mr. Terrell: No, sir.

"The Court: Without telling me what way you stood, whether it was for something or against—just tell me numbers—how the jury stands like 6 to 6, 8 to 4, 10 to 2, 8 to 4—what was the last standing of the jury?

"Mr. Terrell: 6 to 6.

"The Court: 6 to 6. Is that your belief, Mr. Terrell, that by further deliberation the jury may be able to arrive at a unanimous verdict?

"Mr. Terrell: No, sir.

"The Court: Do any of the jurors feel differently, that by further deliberations you may be able to arrive at a unanimous verdict?
"None indicate affirmative.

"Well, you have had two long days. Do you have any further questions, Mr. Traeger, you would ask the jury?

"Mr. Traeger: I have no questions, your Honor.

"The Court: Mr. Wisot, do you have any further questions regarding the ability of this jury to arrive at a verdict?

"Mr. Wisot: None, your Honor.

"The Court: It appears to the Court that the jury is deadlocked and unable to arrive at a verdict.

"The court will declare this to be a hung jury and will declare this a mistrial.

"Juror No. 4, Mr. Miller: Your Honor, may I speak?

"The Court: If your question is—what you say should only be with regard to the subject of whether the jury can arrive at a verdict.

"Juror No. 4, Mr. Miller: The jury—

"The Court: I wouldn't want too much said.

"Juror No. 4, Mr. Miller: No, I will be very careful in my statement.

"The Court: About your deliberations?

"JUROR No. 4, MR. MILLER: I believe, sir, that a verdict might be possible if it could be the factor of a differentiation between simple assault and felonious assault, could be clarified to a full degree.

"THE COURT: I would not consider at this time further instructing you.

"Do any of the jurors feel, without further instructions, the jury could arrive at a unanimous verdict?

"All answer no. The order for mistrial will stand."

■ "[A] jeopardy defense is not available if the jury is discharged for some recognized proper cause. Section 1141 of the Penal Code provides that 'the cause may be again tried, where a jury 'is discharged or prevented from giving a verdict by reason of an accident or other cause'; and section 1140 of the same code declares that 'the jury cannot be discharged after the cause is submitted to them . . . unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree.' " (*People* v. *Demes,* 220 Cal.App.2d 423, 433 [33 Cal.Rptr. 896].)

In the case at bench the foreman advised the court, as spokesman for the jury, that several oral ballots and two written ballots had been taken. In response to the court's further inquiry the foreman responded that the numerical division of the jury, 6 to 6, had not changed significantly over the last few ballots. The foreman declared it to be his belief that further deliberation would not enable the jury to arrive at a unanimous verdict. The court then inquired of the individual jurors as to the probability of reaching a verdict as follows:

"THE COURT: Do any of the jurors feel differently, that by further deliberation you may be able to arrive at a unanimous verdict? *None indicate affirmative.* Well, you have had two long days. . . ." [Italics added.]

Then the court inquired of each counsel whether they had any further questions regarding the ability of this jury to arrive at a verdict and each counsel responded in the negative. Whereupon the court stated "It appears to the Court that the jury is deadlocked and unable to arrive at a verdict. . . . The Court will declare this to be a hung jury and will declare this a mistrial."

■ As stated in *People* v. *Demes, supra,* at pp. 433-434: "Although it has been observed that the jurors should ordinarily be questioned individually as to the probability or otherwise of reaching a verdict (*Paulson* v. *Superior Court,* 58 Cal.2d 1, 7 [22 Cal.Rptr. 649, 372 P.2d 641]), the statute specifies no particular procedure and the final decision is in effect

left to the court's broad discretion." The court here did inquire *individually to the jury panel of the probability or otherwise of reaching a verdict.* [Italics added.] It is also noteworthy that the entire trial required only one court day to present which was January 21. On the second trial day, January 22, the court instructed the jury and sent them out to deliberate at 9:45 a.m. and the jury was returned to the courtroom, dismissed and permitted to separate. On January 23, the court reread the instructions and sent the jury out for further deliberations. They deliberated for two hours before lunch and for fifty-five minutes after the lunch break. They then sent to the court the note above quoted and the proceedings above recited followed. The jury had had the equivalent of two days to deliberate on a case which took only one day to try; they had heard the instructions twice, the last time that same morning.

■ The determination that a mistrial must be declared for failure of the jury to agree upon a verdict lies within the sound discretion of the trial judge to be exercised in view of all of the circumstances. (*Mitchell* v. *Superior Court,* 207 Cal.App.2d 643 [24 Cal.Rptr. 671].) ■ The jury must make a determination as to the defendant's guilt or innocence with respect to the crime charged in the information or indictment, and if its statement is in doubt the trial court must construe it in the light of the whole record of the proceedings and the instructions. (*People* v. *Camarillo,* 225 Cal. App.2d 127, 135 [37 Cal.Rptr. 178].) Although the written statement presented to the court and signed by the jury foreman in the present case may be considered ambiguous, each juror affirmed individually his inability to reach agreement with the others as to the defendant's guilt or innocence of the crime charged and each juror further confirmed that further deliberation would be futile. ■ The subsequent equivocation of a single juror was a matter to be weighed in light of the circumstances by the trial judge who alone "has the opportunity to observe the subtle factors of demeanor and tone of voice." (*People* v. *Superior Court,* 67 Cal.2d 929, 932 [64 Cal.Rptr. 327, 434 P.2d 623, 25 A.L.R.3d 1143].) ■ The single request for repetition of the instructions in the present case was insufficient to impeach the declarations of the majority where the instructions had been twice repeated and the jury had already deliberated at length. (*People* v. *Sullivan,* 101 Cal.App.2d 322, 327-329 [225 P.2d 645].)

■ Defendant also contends that the court in the second trial committed reversible error as it failed to give an instruction on misdemeanor assault. This contention is devoid of merit. In the first place, the record does not show that defendant requested an instruction on simple assault. We now consider whether the trial court was required to give a misdemeanor instruction on simple assault *sua sponte* and we conclude that the trial court was not required to give a simple assault instruction *sua sponte.*

■ "The general rule is that the trial court must instruct the jury on the general principles of law relevant to the issues raised by the evidence, even though not requested to do so, but need not instruct on its own motion on specific points developed at the trial." (*People* v. *Hood,* 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370]: "It is not incumbent on the trial court to anticipate every possible theory that may apply to specific facts and then instruct the jury accordingly. Only those principles of law which are directly connected with the facts of the case need be submitted to the jury by the court *sua sponte* if not requested by the defendant. [Citations.]" (*People* v. *Koontz,* 7 Cal.App.3d 30, 36, 37 [86 Cal.Rptr. 374].)

■ The People's theory was that the assault was done by means of a deadly weapon, to wit, a knife. The defendant's theory was self defense. He testified that he possessed the knife (the deadly weapon) and that he stabbed the victim with the knife, but he used the knife in self-defense; that the victim had attacked him with a "night stick" or "billy club." In line with this theory, defendant offered instruction to the court on self-defense, which the court read to the jury.

The defendant did not request a misdemeanor simple assault instruction, and even if he had requested the instruction, it would have been proper for the court to refuse it. There was no evidence in the record to justify a verdict of simple assault. If in the instant case, the defendant was guilty at all, he was guilty of the more serious offense, assault with a deadly weapon. "The law is well settled in this state that the trial court may properly refuse to instruct upon simple assault where the evidence is such as to make it clear that if the defendant is guilty at all, he is guilty of the higher offense. [Citations.]" (*People* v. *McCoy,* 25 Cal.2d 177, 187-188 [153 P.2d 315].)

The evidence shows without conflict in the instant case, the use of a deadly weapon, a knife, which defendant testified he used to stab the victim. The law is very clear that an instruction on simple assault, whether requested or not, was improper in the case at bench. (*People* v. *Cooper,* 268 Cal.App.2d 34, 36 [73 Cal.Rptr. 608].) We find no error.

Judgment of conviction is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied April 9, 1971.