[Crim. No. 2155. First Appellate District, Division One.—November 22, 1940.]

THE PEOPLE, Respondent, v. CHAN CHAUN, Appellant.

Leland J. Lazarus and James E. Prisin-Zano for Appellant.

Earl Warren, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

WARD, J.—Following a trial by jury, appellant was convicted of the crime of possession of certain narcotics in violation of section 11036 of the Health and Safety Code. He contends upon appeal that the verdict is unsupported by the evidence and is contrary to law; that the court erred in the admission of certain evidence, in the giving of certain instructions to the jury and the failure to give others, also in refusing to grant appellant's motion for a new trial.

On December 19, 1939, two officers of the San Francisco Police Department and two inspectors of the Federal Narcotics Detail entered an apartment in or near Chinatown by means of a pass key. Appellant was not present in the apartment at the time, but a man and woman, both Chinese, were asleep on a mat on the kitchenette floor. In a secret compartment, the officers found opium and other narcotics as well as opium smoking equipment. Letters addressed to the appellant at his place of business were also found in the apartment, as were discarded batteries for an electrical hearing device similar to one used by appellant to assist him in hearing. Several hours later, two of the officers having in the meantime remained at the apartment, appellant was arrested on the street and brought to the apartment which he and the officer entered by the use of a key which appellant had with him. When the officers left the apartment some time later, with appellant, he took with him an overcoat which had been hanging in a closet, and loose change lying on a chiffonier.

The defendant was charged with having in his possession a preparation containing more than two grains of opium to the avoirdupois ounce. ▮ The *corpus delicti* is established by proof that a crime has been committed; the fact must be proven beyond a reasonable doubt. It is sufficient, however, if this essential is met to the extent that the case is submitted to the jury upon substantial evidence. It is for the jury to

say whether the proof is "beyond a reasonable doubt". (*People* v. *King,* 213 Cal. 89 [1 Pac. (2d) 15].) ▮ The evidence shows that there were found in the apartment jars and packages or containers of opium or its derivatives in quantities of two hundred seventy-six grains, forty-two grains, sixty-two grains, thirty-seven grains, three hundred eighty-five grains, three grains, five hundred forty-seven grains, four hundred three grains. To this extent the evidence showed the illegal possession in some one of narcotic preparations, to-wit, opium or its derivatives, in illegal quantities. (Health and Safety Code, sec. 11531.) That the possession was with unlawful intent is demonstrated by the character of the narcotics, and the finding in the apartment of paraphernalia used in smoking opium. ▮ It is not necessary to prove a defendant's connection with the narcotic in order to establish the essential elements necessary to prove the *corpus delicti.* However, the use of the key by appellant in entering the apartment, the letters, the discarded batteries and the overcoat were evidence indicating some form of proprietorship or occupancy by him of the apartment. In *People* v. *Selby,* 198 Cal. 426, 437 [245 Pac. 426], the court in the following language approved the rule laid down in *People* v. *Gonzales,* 72 Cal. App. 626 [237 Pac. 812]: " 'The proof of the *corpus delicti* which must be produced before admissions or confessions of the defendant may be allowed to be put in evidence need not be sufficient to satisfy the minds of the jurors beyond a reasonable doubt of the *corpus delicti.* It is sufficient if the preliminary proof be of a substantial character tending to establish the *corpus delicti. . . . Such substantial evidence may be corroborated and strengthened by admissions and confessions of the defendant, and the proof beyond a reasonable doubt required by the law thus supplied. . . .* ' " (*People* v. *Cannizzaro,* 138 Cal. App. 28 [31 Pac. (2d) 1066]; *People* v. *Baker,* 25 Cal. App. (2d) 1 [76 Pac. (2d) 111].) In *People* v. *Mason,* 37 Cal. App. (2d) 407 [99 Pac. (2d) 567], wherein a defendant was charged with occupancy of a room containing paraphernalia for the purpose of recording bets on horses, in considering a claim of error in the admission of a confession before proof of the *corpus delicti,* the court said (p. 409): "The presence of all the paraphernalia for operating a bookmaking establishment together with the telephones and headpiece in a small bungalow in a remote residential

590

portion of the city, were sufficient to establish the body of the crime. The presence of the markers and scratch sheets constitutes the major element of the offense charged.'' We conclude that the *corpus delicti,* to satisfy the test in *People* v. *King,* 8 Cal. App. 329 [96 Pac. 916], was proven in this case and that thereupon statements and admissions of the appellant were admissible.

It is claimed that the statements made by appellant were not free and voluntary. Appellant appeared as a witness at the trial in his own behalf. The record fails to disclose any testimony by him that force, violence, threats, duress or intimidation were used, or that offers of reward or leniency were made, or that any conduct on the part of the officers, in obtaining the admission of ownership of the narcotics, was unlawful or even unfair. The claim is made that appellant was in custody; that he was hard of hearing and unfamiliar with the English language and that he was not informed that the statements he made might be subsequently used against him.

■ It is primarily within the province of the trial court to determine the admissibility of statements made by an accused from which an inference of guilt may be drawn, and a reviewing court will not reverse a conviction because of such admission unless its inadmissibility ''appears as a matter of law from the record presented''. (*People* v. *Lehew,* 209 Cal. 336 [287 Pac. 337].)

■ The fact that the statements were made in response to questions of officers of the law while the accused was under arrest does not render an admission or a confession involuntary or inadmissible, but it may be a circumstance to consider. All of the circumstances surrounding the making of the statements should be considered in each case and hence no definite rule of admission or exclusion may be formulated. (*People* v. *Siemsen,* 153 Cal. 387 [95 Pac. 863].) ■ It is better and safer practice to inform an accused that his replies may be used against him, but if the statements are not made under oath, or under conditions requiring such a warning, the failure specifically so to instruct an accused does not affect the admissibility of the statement as evidence. (*People* v. *Aguilar,* 140 Cal. App. 87 [35 Pac. (2d) 137, 142].)

Appellant relies upon *People* v. *Quan Gim Gow,* 23 Cal. App. 507 [138 Pac. 918]. In that case the opinion holds that the answers to questions were unwillingly given by an

accused who did not "savvy" or understand and who "appeared afraid". There is no such testimony in this case, not even from the appellant who is American born and a registered voter in San Francisco. He testified that he had been in business for a long period and catered to American customers. He was hard of hearing but used a contrivance that assisted him in that respect. Assuming that he had no Chinese friends to advise him, it has not been shown that he needed advice. On the contrary, the evidence shows that he had been arrested before. Upon a previous occasion, when requested to permit an officer to search the same apartment, he used his own key to admit the officer and stated in substance that "you won't find any stuff in the rooms, Sergeant". Sufficient foundation was laid for the reception of the statements of appellant made at the time of his arrest. The transcript of testimony reads in part as follows: "Q. Well, did you ask him any further questions or was there any further conversation? A. Yes, he asked me if I was going to arrest the man and the woman, and I told him I was, that it would be necessary. He said 'They have nothing to do with it', that it was his goods. I asked him how much he was paying for the apartment, and he said he was paying thirty-seven and a half a month rent." "Well, the defendant was asked if he rented the apartment and he said that he did. I asked him what was the idea of using the name of Yung Fat, and he said 'Oh, he not be here for four or five years'. Inspector Manion ordered the other two persons to get dressed. The defendant stated that there is no use of taking them down there; that they had nothing to do with it; that the stuff belonged to him. He said 'They know nothing about this stuff'. He said, 'Why lock them up? It is my stuff.' That conversation went on for a period of five or ten minutes. He repeatedly stated we should not remove the other two people."

On behalf of appellant, the record discloses that other persons had keys and access to the apartment; that rent receipts found there and telephone service were in the name of Yung Fat; that appellant was not the man known as Yung Fat, although the latter did not appear as a witness; that appellant lived in the rear of one of his places of business located elsewhere than in the apartment house; that he visited the apartment for the purpose of playing Mah Jong and occasionally to cook a meal. On behalf of the prosecution it was shown, for the

purpose of proving proprietorship, that a revolver found in the apartment was admitted by appellant to be his property. At the trial, however, he denied such admission. He admitted that when he was arrested previously on another charge, he had given the apartment as his residence, and that he had also given that address in connection with an income tax return filed. From all of this testimony it was for the jury to determine the question of active or constructive possession of the narcotics.

Appellant contends that the court erred in refusing to give instructions requested by him, and in failing to give on its own motion instructions on general principles of law pertinent to the cause.

The instructions given seem to cover the general principles of law bearing upon the case. However, appellant quotes eight refused instructions relating to proof of *corpus delicti*, to the matter of statements attributed to him as a confession being made freely and voluntarily, without threats or physical force; to statements made without an interpreter, and an instruction that caution should be observed relative to oral admissions. Repetition appears in some of the proposed instructions. The jury was instructed "that it is their duty to view with caution evidence of the oral admission of the defendant"; that the possession of the narcotics must have been an immediate and exclusive possession; in substance that if the jury was not satisfied to a moral certainty and beyond a reasonable doubt that such possession was under the dominion and control of the defendant he should be found not guilty.

■ Since appellant as a witness did not testify that the so-called confession had been made against his will, and no other testimony to that effect has been called to our attention, we must conclude that the trial court properly refused to instruct relative to threats, violence, duress, etc. ■ The court should have instructed that proof, independent of the statements of appellant, was necessary to prove the *corpus delicti*, but in this case, irrespective of such statements, there was evidence proving the *corpus delicti*. The failure to instruct on this question is therefore not reversible error. (*People* v. *Roganovich*, 77 Cal. App. 158 [246 Pac. 132]; *People* v. *Hopper*, 42 Cal. App. 499 [183 Pac. 836]; 16 C. J., p. 1003, sec. 2421.)

■ Seven of the eight refused instructions deal with so-called "confessions." The statements made by appellant did not constitute a confession within the legal definition of that word and the instructions therefore were properly refused. Appellant's statements do not admit all the elements of the offense. Possession was admitted but no statement was made that the narcotics were in avoirdupois weight in excess of that prohibited by the statute. In other words, there was no statement made from which an inference could be drawn that the possession was without legal justification. "An admission as applied to criminal law is something less than a confession, and is but an acknowledgment of some fact or circumstance which in itself is insufficient to authorize a conviction, and which tends only toward the proof of the ultimate fact of guilt. On the other hand, a confession by a defendant leaves nothing to be determined, in that it is a declaration of his intentional participation in a criminal act, and must be a statement of such a nature that no other inference than the guilt of the defendant may be drawn therefrom." (*People* v. *Ferdinand,* 194 Cal. 555, 568, 569 [229 Pac. 341].)

■ Immediately after the jury returned a verdict against appellant, he made a motion for a new trial, which was denied eight days later, following which, on the same date, a motion for probation was made. This motion was denied a month later, immediately following which a second motion for a new trial was made and denied, and judgment pronounced. Appellant contends that since the enactment of Health and Safety Code, section 11715.6, probation may not be granted for the offense of which he was convicted; that his motion for probation did not extend the time for the pronouncement of the judgment, and that the delay of thirty-nine days from the date of the verdict to the pronouncement of the judgment entitled him to a new trial. If the court fails to pass upon a motion for a new trial as provided in Penal Code, section 1191, and the convicted defendant is prejudiced thereby, a new trial under section 1202 of the same code should be granted. (*In re Rothrock,* 14 Cal. (2d) 34 [92 Pac. (2d) 634].) However, unless a miscarriage of justice appears, judgment should be pronounced. (Const. California, art. VI, sec. 4½; *People* v. *French,* 12 Cal. (2d) 720 [87 Pac. (2d) 1014]; *People* v. *Stroff,* 134

Cal. App. 670 [26 Pac. (2d) 315]; *People* v. *Pollock*, 31 Cal. App. (2d) 747 [89 Pac. (2d) 128], and cases cited.)

In the instant case, the postponement resulted from the presentation by defendant of a motion for probation. It is contended that the court compelled him to make the motion. The record discloses that the court suggested the motion for probation for the purpose of enabling the court to obtain information and consider matters that might be called to its attention in the report of the probation officer. Technically appellant is correct, that the judgment should have been pronounced within the time allowed by section 1191 of the Penal Code, but he acquiesced in the suggestion of the court of a continuance for this period. The procedure is not to be approved and is rather dangerous from the standpoint of protection of the state's rights, but no injury resulted to appellant such as appeared from the record in the Rothrock matter.

The failure to pronounce judgment within the time prescribed by law "does not automatically entitle the defendant to a new trial . . . , nor does such delay render the judgment void for lack of jurisdiction". (*People* v. *Pollock, supra*, p. 761. Appellant in this case has failed, except in one instance, to point out wherein the failure to conform to procedure has or will result in prejudice to his legal rights. He claims that the twenty-four days of incarceration in jail pending the denial of the motion for probation would in effect be added to any sentence imposed. If appellant objected to the period of incarceration during the time the trial court was examining the record to determine the place of confinement, *habeas corpus* proceedings would have been a proper remedy. The Board of Prison Terms and Paroles fixes the period of incarceration in the state prison. The record does not disclose that such body will add to or subtract from the period, or that it will refuse to take into consideration the twenty-four days spent by appellant in the county jail. We are not convinced that any prejudice has or will result to appellant in this connection.

We find no error in this case that would justify a reversal. The judgment and order are affirmed.

Peters, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 19, 1940.