[Crim. No. 4583. Second Dist., Div. Three. May 23, 1951.]

THE PEOPLE, Respondent, v. HARRY BIGELOW, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

VALLÉE, J.—Harry Bigelow and Florence Ivery were tried by a jury and convicted of a violation of section 11500 of the Health and Safety Code—possession of a preparation

of heroin. Bigelow appeals from the judgment and from the order denying his motion for a new trial. He asserts: (1) The corpus delicti was not established. (2) The evidence was insufficient to prove that he possessed the narcotic. (3) The evidence was insufficient to prove guilty knowledge. (4) The evidence was insufficient to prove "aiding and abetting." (5) The court erred in the admission and exclusion of evidence. (6) The prosecutor was guilty of prejudicial misconduct. (7) The court erred in the giving and refusal of instructions. (8) The use of a purported confession violated constitutional guarantees.

About 5 p. m. on April 13, 1950, three officers were parked in an automobile near 1134 East 127th Street, Los Angeles. About 6 p. m. Bigelow came out of the house at that address, changed the water, and went back into the house. About 10 p. m. he again left the house, entered a car, and drove to Compton where he was stopped by the officers who had followed him.

The officers then searched Bigelow and the automobile. He told them he was looking for a house to buy and that he lived at 1134 East 127th Street. The search revealed nothing. Bigelow testified "he [an officer] shook me down, he said that he heard that I was fooling with stuff—it is the word stuff again—and I asked him what did he mean, and he said narcotics." The officers and Bigelow then returned to 1134 East 127th Street. One of the officers approached the front door of the house with Bigelow and rang the bell. Defendant Florence Ivery opened the small aperture in the front door and looked out. The officer identified himself and Bigelow said, "Open the door, honey, this is a deputy sheriff with me." Florence closed the small aperture and the officer heard footsteps running toward the back of the house. The officer then forced the front door open with his shoulder. When he got in Florence was standing in the center of the living room moving her right hand and crumpling her fist. As she did so white powder fell to the rug. The officers opened her hand and found therein a crumpled and shredded piece of paper. Some of the white powder was picked up from the rug and examined by a chemist. It was heroin.

The officers searched all the rooms in the house at that time but did not move all the furniture. When they left the house all doors and windows were locked and Bigelow locked the front door.

Bigelow, Florence, and several other people who had entered

the house, were taken to a sheriff's office. The officer asked Bigelow if he had any more narcotics at the house. He said he did not; that he did not use narcotics; that Florence used a little.

The next day three officers returned to the house at 1134 East 127th Street with Bigelow and an agent of the Federal Bureau of Narcotics for the purpose of further searching the front bedroom because the officer in charge was not satisfied with the search of that room made the night before. They entered the house with a key. The testimony with respect to the key is as follows: "We used the key to the front door which had been placed in the defendant's property at the County Jail the previous night when he was booked," and "We used the key that he had obtained from his property to gain admittance to the location and then we proceeded to search that bedroom that I hadn't searched the previous night." All of the doors and windows were still locked. The officers searched the house again and in so doing moved a vanity dresser in the front bedroom. On the floor under the dresser they found an aluminum tube containing 81 capsules of white powder. In a closet off this room there were numerous men's shirts. In another bedroom they found a cardboard box labeled "empty gelatin capsules." Ten of the capsules analyzed were heroin. After he found the capsules one of the officers asked Bigelow if the "stuff" he found belonged to him. Bigelow replied, "Well, you are a good detective, aren't you?" The federal agent asked Bigelow if the "stuff" belonged to him and he said, "I will tell you about that later."

Later the same day in the presence of Florence an officer asked Bigelow if the "stuff" found in the house was his and told him he did not want him to say it was his if it was not. Bigelow replied, "Well, the stuff is mine." The officer repeated the question and again said he did not want him to say it was his if it was not. Bigelow replied, "Well, I am not saying it just to be saying it, I am saying it because it is mine." In the same conversation the officer told Bigelow that he did not want him to take the blame for anything that did not belong to him, that if it did belong to him to say so. Bigelow said, "Yes, that is mine. She has a previous narcotic rap on her." The federal narcotic agent testified that the word "stuff" means a narcotic or dangerous drug of some kind to persons who use or possess narcotics.

Bigelow testified he had some of his clothes in the house

at 1134 East 127th Street; that he had some suits in the closet off the front bedroom and some shirts locked in a compartment in the same room. He denied possession of any heroin and denied making the statements testified to by the officers. Bigelow and Florence had been seen at that house frequently during the preceding year and a half.

██ The evidence established the corpus delicti. It showed the illegal possession of heroin by someone. It is not necessary to prove a defendant's connection with the narcotic in order to establish a corpus delicti. (*People* v. *Chan Chaun,* 41 Cal.App.2d 586, 589 [107 P.2d 455].)

██ The evidence was also sufficient to establish that Bigelow "possessed" the narcotic, that he had knowledge of its presence, and that he knew the substance in his possession was a narcotic. ██ " 'A person has "possession" of a chattel who has physical control with the intent to exercise such control, or, having had such physical control, has not abandoned it and no other person has obtained possession. (Rest., Torts, § 216.)' " (*People* v. *Gory,* 28 Cal.2d 450, 455 [170 P.2d 433]; *People* v. *Noland,* 61 Cal.App.2d 364, 366 [143 P.2d 86].) ██ Bigelow told the officers· he lived at 1134 East 127th Street. He had the key to the house. He was seen frequently there. His clothing was in the bedroom where the 81 capsules were found. He was at first evasive in his answers to the officers. He later said the "stuff" was his. He knew at that time that "stuff" meant a narcotic. The evidence was ample to warrant the jury in inferring that Bigelow occupied the front bedroom, that the heroin found in that room belonged to him, that he knew it was there and that it was heroin. (*People* v. *Hoff,* 84 Cal. App.2d 398 [190 P.2d 616]; *People* v. *Salo,* 73 Cal.App.2d 685 [167 P.2d 269].) In view of the fact that the evidence was sufficient to establish that Bigelow illegally possessed the narcotic we need not consider his contention that it was insufficient to establish that he aided and abetted Florence.

██ On cross-examination the prosecutor asked Florence Ivery, "As a matter of fact, you were on the 13th of April the commonlaw wife——." She answered, "No, I am no commonlaw wife, uh-uh." After the answer Bigelow's objection to the question was sustained. He did not move to strike the answer or ask the court to disregard the fragmentary question or the answer. Assuming without deciding that the question was improper, there was no error. The answer was favorable

to Bigelow. An answer to an improper question that is favorable to the defendant is a complete reply to a claim of prejudicial error in asking the question. (*People* v. *O'Donnell*, 11 Cal.2d 666, 671 [81 P.2d 939].)

■ On direct examination Florence Ivery was asked whether she knew what heroin was. She replied that she had seen it in the presence of officers but if someone showed it to her and asked her to identify it she would not know it. On cross-examination she testified that she did not know what heroin was until the officers showed her on April 14th what they supposedly found, and that never to her knowledge had she seen any before that. She was then interrogated as to whether she had not seen heroin in the Compton municipal court on March 13, 1950. The interrogation in full is set forth in the margin.[1] Bigelow asserts that the prosecutor was guilty of prejudicial misconduct in making this inquiry, that the court erred in overruling his objections and in deny-

---

[1] "Q. Didn't you see some on the 13th of March? A. I didn't understand that question. Q. Didn't you see some on the 13th of March out in the Compton court? MR. RUBIN: Just a moment. That is objected to as being incompetent, irrelevant, and immaterial. A. No. I wasn't in the Compton court. MR. RUBIN: Please, just a moment—object to that as being not in the issues of this case. THE COURT: Overruled. MR. RUBIN: I cite any reference to it as prejudicial misconduct on the part of the District Attorney and ask the jury be instructed to disregard it. THE COURT: The witness testified she has no knowledge of it, never seen any, can't tell it when she sees it. MR. CARR: Q. You say that you did not? A. Not on the 13th, no. He didn't show me anything on the 13th. Q. Were you in the Municipal Court of the City of Compton, County of Los Angeles, State of California on the 13th of March, this year? MR. RUBIN: Object to that, your Honor, —A. No, not the 13th, sir. MR. RUBIN: —as being incompetent, irrelevant and immaterial. THE COURT: Overruled. Q. BY MR. CARR: Did you have a hearing out there at the Compton court on the 13th of March? A. Not the 13th, sir. It probably was after that because I think it was ——of March? A. March. A. April? March or April, which? Q. I am talking about March. A. The 13th of March? Q. Just about a month before you were arrested on this charge? A. Oh, yes, yes. Q. And at that time there was about fourteen capsules in the bindle of Heroin there in the courtroom, was there? A. I believe it was, but I didn't—no, they didn't even show it to me that day. I didn't even see it. Q. They showed it to your attorney and you were sitting alongside of him, didn't they? A. I don't remember. Q. You heard them talking about it there in the court, didn't you? A. Yes, I remember. Q. And then there was a—some objects were shown to your attorney there in the court, weren't there? A. Yes, I do—yes, now I remember, yes. I do remember seeing him handling something. Q. And that something that he was handling was handed and shown—was Heroin, wasn't it? A. I guess it was but my attorney didn't show it to me, he was just looking at it in the courtroom and he didn't speak about it himself, and writing some notations and give it back to the fellow and that is all. Q. You heard it referred to as Heroin, didn't you? A. Certainly. Q. Did you look at it while your attorney had it? A. No, I didn't, because it was all kind of sealed-like and I couldn't see anything."

ing his motion, and that the same was prejudicial to him. There was no error. Insofar as the prosecution was against Bigelow, Florence was a witness. A witness may be cross-examined as to any facts stated in his direct examination or connected therewith. (Code Civ. Proc., § 2048.) ■ The fact that an inquiry on cross-examination may bring to light criminal conduct of a witness does not render such cross-examination erroneous when it is relevant to the subject matter of the direct examination. (*People* v. *Crow*, 48 Cal. App.2d 666, 671 [120 P.2d 686]. See *People* v. *Dabb*, 32 Cal. 2d 491, 499 [197 P.2d 1].)

■ On direct examination Bigelow was asked if he had ever been convicted of a felony. He said he had been in 1935. He was not then asked if it was a narcotic conviction. He said it was not. On cross-examination he was questioned as set forth in the margin.[2] Bigelow asserts that the prosecutor was guilty of prejudicial misconduct in this cross-examination. A cross-examiner's inquiry is limited to the fact of conviction and the nature of the offense. He may not go into the details or circumstances surrounding the offense. (*People* v. *Braun*, 14 Cal.2d 1, 6 [92 P.2d 402].) While we cannot place a

[2]"Q. You say that you were arrested in 1935? A. I was convicted in 1935, yes, sir. Q. And you were convicted of, let's see, a couple of counts of first degree robbery and a couple of counts of assault with a deadly weapon and carrying concealed weapons, is that right? A. No, sir, that isn't right. It all come out of one place, it was two counts against one man, supposed to have been two fellows there. Q. Those were first degree robberies, weren't they? A. Well, my car was involved in it, I think they were. Q. I am not asking what your car was involved in, I am asking you the nature of the offenses you were convicted of. A. If you want to ask me the question I have to answer like that. THE COURT: The only question is, what were you convicted of? MR. RUBIN: If the Court please, we will stipulate he was convicted of the crimes of robbery and of assault with a deadly weapon. MR. CARR: I want this witness to answer. I won't accept the stipulation. MR. RUBIN: Very well. MR. CARR: There is nothing funny about it. THE WITNESS: No, sir, I paid for it, I will answer it, I paid for the crime, I will answer it. MR. CARR: I don't want a dissertation either. THE COURT: Just a minute. MR. RUBIN: Just a moment, I am going to object, your Honor, to the tone of voice being used, and badgering of this witness by Mr. Carr. Mr. Carr indicating nothing was funny—— THE COURT: I think both Mr. Carr and the witness raised their voices. MR. RUBIN: Let the record show Mr. Bigelow did nothing, I think, which is funny. MR. CARR: When Mr. Rubin becomes the judge of it, then I will be bound by what he can see. MR. RUBIN: I object to the badgering of the witness. THE COURT: That remark is wholly unjustified, he is not badgering the witness. Let's have a question. Q. BY MR. CARR: The crimes of which you were convicted were first degree robbery, is that right? A. Yes, sir, I was convicted of first degree robbery and assault with a deadly weapon. Q. And you served a term of imprisonment therefor, didn't you? A. Yes, sir, I did."

stamp of approval on the manner in which the cross-examination was conducted, we cannot say that the prosecutor was guilty of prejudicial misconduct. Bigelow was charged in the information with a prior conviction of robbery and one of assault with a deadly weapon. It would have been a simple matter for the prosecutor to have asked if those were not the prior convictions. (See *People* v. *Jacobs,* 73 Cal.App. 334, 347, 350 [238 P. 770].) No inquiry was made as to the details or circumstances surrounding the offenses. Other claims of prejudicial misconduct on the part of the prosecutor are wholly without merit.

The federal narcotic agent who assisted in searching the house and in interrogating Bigelow testified that the word "stuff" means a narcotic or dangerous drug of some kind to persons who use or possess narcotics. Bigelow asserts that the court erred in admitting the evidence. As there was no objection to the question which elicited this evidence and no request made that the jury be instructed to disregard it, Bigelow cannot raise the point on appeal.

Bigelow complains because the instructions were couched in the masculine gender. He says he was therefore improperly singled out by the court to his prejudice as his codefendant was a woman. The court instructed the jury that they were required to decide separately the question of the guilt or innocence of each of the two defendants.[3] We are unable to see how Bigelow was prejudiced in the slightest in this respect.

The court defined "possession" of a narcotic to the jury.[4] It then defined "principals,"[5] and "aiding and abet-

---

[3] "In this case, you must decide separately the question of the innocence or guilt of each of the two defendants. If you cannot agree upon the innocence or guilt of both the defendants, but do agree as to the innocence or guilt of one of them, you must render a verdict as to the one upon whose innocence or guilt you do agree."

[4] "Within the meaning of the law, a person is in possession of a narcotic when it is under his dominion and control, and, to his knowledge, either is carried on his person or is in his presence and custody, or, if not on his person or in his presence, the possession thereof is immediate, accessible, and exclusive to him, provided, however, that two or more persons may have joint possession of a narcotic if jointly and knowingly they have the dominion, control and exclusive possession I have described."

[5] "All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof."

ting.''[6] Bigelow asserts that the instructions defining principals and aiding and abetting, and telling the jury that a person, ''whether present or not,'' who advises and encourages the commission of the offense, are inconsistent with the instruction defining ''possession'' of a narcotic. His theory appears to be that one cannot aid and abet another in committing the offense denounced by Health and Safety Code, section 11500, and that, in the commission of that offense, one cannot be a principal who, not being present, advises and encourages its commission. Section 11500 provides in part that ''no person shall possess'' a narcotic except upon prescribed conditions not present here. The possession may be individual, through an agent, or joint with another. (*People* v. *Graves,* 84 Cal.App.2d 531, 534 [191 P.2d 32].) All persons concerned in the commission of the crime, whether they commit the act constituting the offense or aid and abet in its commission, are principals. (Pen. Code, § 31.) We think it clear that one may aid and abet another in the possession of a narcotic, and that one who is not present may advise and encourage another in its commission. (*Cf. People* v. *Borrego,* 211 Cal. 759 [297 P. 17] ; *People* v. *Sinclair,* 129 Cal.App. 320, 322 [19 P.2d 23].) We find no inconsistency in the instructions.

Bigelow asserts that the court erred in not giving instructions on the law of confessions. He argues that the court failed to tell the jury ''the circumstances under which a confession is 'voluntary' '' and that the jury should have been told to disregard a false confession. The instructions given on confessions are set forth in the margin.[7] In a proper

---

[6] ''One who does not actively commit the offense, but who aids, promotes, or encourages its commission either by act or counsel or both, is not deemed by law to be guilty and shall not be found guilty of the crime unless he did what he did knowingly and with criminal intent. To abet another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting, or aiding the commission of such criminal offense.''

[7] ''The law of this state admonishes you to view with caution the testimony of any witness which purports to relate an oral admission of the defendant or an oral confession by him.''

''Evidence has been received in this case tending to show that on an occasion or occasions other than this trial defendant made a statement or statements tending to prove guilt of the alleged crime for which he is on trial.

''A statement thus made by a defendant may be either a confession or an admission.

''A confession is a statement that was made by one who is a defendant in a criminal trial, at a time when he was not testifying in that trial, by which he acknowledged certain conduct of his own that constituted a

case where there is an issue as to whether a confession was voluntary or involuntary, the court should instruct the jury as to when a confession is voluntary and when it is involuntary. ▮ In the present case there was no contention below that the statements of Bigelow to the officers were not voluntary. He denied making the statements. There was no evidence that force, violence, threats, duress, or intimidation was used; or that an offer or promise of reward or leniency was made; or that any hope of immunity was held out; or that the conduct of the officers in obtaining the statements was unlawful or even unfair. The fact that the statements were made in response to questions of officers of the law while the accused was under arrest does not in and of itself render the statements involuntary. (*People* v. *Rogers*, 22 Cal.2d 787, 805 [141 P.2d 722].) Bigelow was not prejudiced by the failure of the court to instruct the jury as to ''the circumstances under which a confession is 'voluntary.' '' ▮ There was no error in not directly telling the jury that they should disregard a false confession. Bigelow did not testify or contend that the statements which the officers testified he made were false. He testified that he did not make them at all. Further, the instructions told the jury that a statement of a defendant was a confession only ''if true''; that they were the exclusive judges as to whether or not it was true; and that, in deciding that question, they were to consider all the circumstances connected with the making of the statement. (*People* v. *Liss*, 35 Cal.2d 570 [219 P.2d 789], and *People* v. *Mehaffey*, 32 Cal.2d 535 [197 P.2d 12], cited by Bigelow in this behalf, are not applicable. In Liss, the court condemned the following instruction: ''But even if you should find that a confession was false, either entirely or in part, it remains, nevertheless evidence for your consideration, to be given such significance as

---

crime for which he is on trial, a statement which, if true, discloses his guilt of that crime and excludes the possibility of a reasonable inference to the contrary.

''If under my instructions you find that a voluntary confession was made, you are the exclusive judges as to whether or not the confession was true; and in deciding that question you should consider all the circumstances connected with the making of the statement, as shown by the evidence.

''An admission is something less than a confession in that it does not concede so much pointing toward defendant's guilt, and does not alone, even if true, support a deduction of guilt. It may consist of any statement or other conduct by a defendant whereby he expressly or impliedly acknowledges a fact that contributes in some degree to the proof of his guilt of an alleged crime for which he is on trial, and which statement was made or conduct occurred outside of that trial.''

your judgment may determine under instructions.'' (35 Cal. 2d 573.) Mehaffey does not discuss the point made by Bigelow.

■ Lastly, Bigelow asserts that ''the use of the purported confession violated due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States.'' The contention is apparently predicated upon the fact that Bigelow was taken into custody on the night of April 13, 1950, remained in custody that night, was taken to the house at 1134 East 127th Street the next day, and then returned to the sheriff's narcotic division where he made the confession. We find nothing in these facts which rendered the use of the confession violative of the due process clause. As we have said, the fact that the statements were made in response to questions of officers of the law while the defendant was under arrest does not in and of itself render the statements involuntary or taken in violation of the due process clause. (*People* v. *Mehaffey, supra,* 32 Cal.2d 535, 548, 552; *People* v. *Rogers, supra,* 22 Cal.2d 787, 805.) We have examined *McNabb* v. *United States,* 318 U.S. 332 [63 S.Ct. 608, 87 L.Ed. 819], *Anderson* v. *United States,* 318 U.S. 350 [63 S.Ct. 599, 87 L.Ed. 829], and *Chambers* v. *Florida,* 309 U.S. 227 [60 S.Ct. 472, 84 L.Ed. 716], relied on by Bigelow in this behalf, and find nothing in any of them which even suggests that the use of Bigelow's confession violated the due process clause. In McNabb, the court stated: ''The mere fact that a confession was made while in the custody of the police does not render it inadmissible.'' (87 L.Ed. 827.) *People* v. *Simmons,* 28 Cal. 2d 699 [172 P.2d 18], cited at the oral argument, is not in point. That case discusses at length the admissibility of accusatory statements and a defendant's responses thereto. No accusatory statements were made to Bigelow.

The judgment and order denying a new trial are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.