[Crim. No. 933. Fourth Dist. Jan. 20, 1953.]

THE PEOPLE, Respondent, v. ROBERT RAY HERNANDEZ, Appellant.

Albert Hampton and Carl T. Rimbaugh for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged with the crime of possession of a narcotic (heroin) in violation of section 11500 of the Health and Safety Code. A trial by jury resulted in a conviction as charged, and a three months' jail sentence was imposed. The heroin was found in defendant's car. He now claims that the evidence is insufficent to show that he *knowingly* had *possession* of it, and that the court erred in denying him the right to examine the arresting officer concerning the name of a claimed informer.

On the evening of March 8, 1952, about 11 o'clock, Narcotic Inspector O'Connor, accompanied by three other officers, saw defendant backing his car (a 1950 black Pontiac sedanette) out of the driveway of the "99er Cafe" on Highway 99 near Loma Linda. The inspector testified that defendant proceeded easterly toward Redlands; that they pursued defendant's car and as they approached the Mona Lisa Club about one mile from the 99er Café, they discovered defendant's car parked in a parking area across the street from it; that they remained in their car, and after about one hour, defendant, who had been at the club, drove away in his car; that due to the fact that they were obliged to make a turn at an island intersection, they lost sight of defendant's car;

that they went to a house at 62 Juanita Street about 2 a.m. on March 9th, and maintained a "stake-out" for about 20 minutes; that the dark sedanette of defendant's pulled into a parking area; that the driver got out, went into the house, and after a short time the officers went in; that defendant was then in bed; that he was asked if he had any "contraband" and that defendant said "no"; that the officers said: "Well, we heard you have" and defendant said: "Well, go ahead and look around; you are the police." A description of defendant's clothing tallied with that worn by defendant at the Mona Lisa Club. The officer testified that they asked defendant if he had been at that club or the 99er Café that night and defendant said "no"; that they asked him where he had been earlier in the evening and defendant stated he had just been "out." He was asked if the car parked by the house was his and he said it was. The keys were given to the officer. Defendant went with them to the car and unlocked it. While searching the glove compartment defendant's "Legion cap" fell out on the floor. Defendant made a sudden motion of his hand to pick it up. The officer, by means of a flashlight, suddenly noticed a small green box lying on the floorboard by the cap. The officer picked it up and asked the defendant what it was and what was in it and defendant said: "All right, you have got me." A few moments thereafter, however, he said: "I don't know anything about it." The box contained four paper bindles of gelatin capsules of heroin.

Defendant was arrested and questioned at the jail. The officer testified that he asked the defendant if he knew the seriousness of fooling around with narcotics and defendant stated that he did. He then asked him if he ran around with persons known as Vasquez and Contreras and defendant at first denied knowing these individuals but later said: "he knew them but did not run around with them because they fooled around with that stuff." Defendant was then asked why he lied when he told the officers he had not been at the Mona Lisa Club nor the 99er Café and defendant said: "Come to think of it, I was at the Mona Lisa; I was in the parking lot; I went there to get a taco." He was asked who was with him and he said he was alone. The inspector testified that defendant, known as "Bob," as well as Contreras and Vasquez, had been suspected dope peddlers for quite a while, and defendant had been pointed out to the inspector on an occasion about three weeks prior to his arrest.

438

While seated in the jail office the inspector told defendant he intended having the box examined for fingerprints and defendant immediately reached for the box but his hand was knocked away by the inspector. The box was turned over to the police chemist but apparently there was no evidence produced in reference to fingerprints thereon.

Defendant testified generally that he was never known as "Bob"; that he had never been to the 99er Café in his life; that on the evening in question he was taking Mexican Nationals to various places; that he stopped at the Mona Lisa for an enchilada and there saw Escavedo (also known as Escadero) who had turned against him for claimed personal reasons, and inferred that he might have placed the narcotics in defendant's car "to get even with him." However, the inspector testified that Escadero was not at the Mona Lisa that evening and Escadero's name was never mentioned to him by defendant until two months after his arrest. He denied generally any guilty knowledge of the possession of heroin and stated that he did not know what the substance was.

■ Possession of a chattel is established when it is shown that a person has physical control thereof with intent to exercise such control, or having had such physical control has not abandoned it and no other person has that possession. (*People v. Bassett,* 68 Cal.App.2d 241, 247 [156 P.2d 457]; *People v. Sweeney,* 66 Cal.App.2d 855, 860 [153 P.2d 371].) ■ It is not necessary to prove that the accused had the unlawful article on his person. (*People v. Sinclair,* 129 Cal.App. 320, 322 [19 P.2d 23].) ■ The evidence, when considered in connection with the inference of guilty knowledge arising from the admissions, false, misleading and contradictory statements of the accused, is sufficient to support the conclusion that the defendant knowingly had possession of the heroin. (*People v. Gory,* 28 Cal.2d 450 [170 P.2d 433]; *People v. Bigelow,* 104 Cal.App.2d 380, 384 [231 P.2d 881].)

■ On cross-examination, the inspector was asked by counsel for defendant from whom, or what source, he received the information about defendant "Bob" and the license number of his car. The court sustained the prosecution's objection to the question after the witness claimed a privileged communication under section 1881, subdivision 5, Code of Civil Procedure, which provides:

"CONFIDENTIAL COMMUNICATIONS. There are particular relations in which it is the policy of the law to encourage con-

fidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: . . .

"5. *Public Officers.* A public officer cannot be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure."

It is problematical whether proper objections were made at the time and whether defendant sufficiently presented and maintained his position before the trial court. Defendant recognizes the privileged communication rule enunciated by the statute and the holdings in *City & County of San Francisco* v. *Superior Court,* 38 Cal.2d 156, 161 [238 P.2d 581]; *People* v. *Santora,* 51 Cal.App.2d 707 [125 P.2d 606]; Fricke's California Criminal Evidence [1945] p. 282; 22 Cal.L.Rev. 669, 59 A.L.R. 1559; and 9 A.L.R. 1112, but argues that there are certain exceptions to this rule and the evidence here produced brought the defendant within those exceptions and that there was a waiver of the privilege by the officer when he testified that Escadero was not the informer. He cites such cases as *People* v. *King,* 122 Cal.App. 50 [10 P.2d 89]; and *Rex* v. *Richardson,* 3 F. & F. 693 [1863].

Here, the defendant denied knowledge of the presence of the narcotic in his car, and by innuendo endeavored to convince the jury that one Escadero planted the narcotics there as a means of "getting even" with him because of the fact that his sister had reported Escadero as an escapee. The rebuttal testimony of the officer that Escadero was not the informer was not a waiver of any claimed officer-informer privilege but was a rebuttal of the inference endeavored to be presented to the jury by the defendant.

The trial court committed no prejudicial error in excluding the testimony concerning the name of the informer, which name was communicated to the public officer in confidence.

Notwithstanding defendant's ability to present many favorable witnesses in reference to his claimed good character, the evidence was sufficient to sustain the conviction, and no prejudicial error appears.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.