[Crim. No. 6938. Second Dist., Div. One. June 8, 1960.]

THE PEOPLE, Respondent, v. GABRIEL JOSEPH BAR-
RERAS et al., Defendants; EDWARD THOMAS
BENAVIDEZ, Appellant.

Edward Thomas Benavidez, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

LILLIE, J.—By information, defendant and one Barreras were charged in three counts with robbery, attempted robbery and murder in violation of section 187, Penal Code. The dis-

trict attorney prosecuted only count 3, he having later dismissed the first two counts. Defendant personally waived his right to a jury trial and, by stipulation, the matter was submitted to the trial court on the transcript of the testimony taken at the preliminary hearing; also submitted for the consideration of the court was a written statement of the defendants and one Trujillo taken by officers, upon their arrest. Although defendant entered a plea of not guilty, he offered neither evidence thereon nor his own testimony at the trial. Both defendants were found guilty of first degree murder.

The evidence discloses that one Aaron William Johnson died December 25, 1958, the result of a gunshot wound in the chest. At approximately 2:05 a.m. on December 21st, Dale M. Allsop and Johnson crossed the street behind a 1949 Mercury automobile. As they continued walking, the car pulled up alongside of them, from which emerged two male Mexicans in their teens (Barreras and defendant). One (a minor, David Trujillo) remained in the car. They told Allsop and Johnson, at whom defendant had a gun pointed, to throw out their wallets. Allsop, having no wallet, threw what change he had on the ground; Johnson, having an injured back, sat down on the ground to rest while they were talking. He got up and, holding his back, walked toward them; defendant shot him in the chest. Defendant and Barreras then returned to the car, which had stalled, and forced Allsop at gun point to help push it. He did so but immediately thereafter called police who found Johnson's body face down and near a Mercury automobile stuck in the mud. At approximately 4:30 a.m. defendant and Barreras appeared at the home of Angie Villalobes. Defendant told her he was in trouble and asked her to take his friends home; he said he had shot a man. Around 6 or 6:30 a.m. he placed a shotgun under her bed.

On December 21, 1958, officers rang the bell and walked into the frontroom of a house on 46th Street where they arrested Barreras who was asleep on a couch. He asked the police why they were arresting him and when they told him he knew, Berraras responded "No"; one officer picked up a pair of shoes from the floor and asked him to look at the mud on them; the police then told him they had found the automobile and knew he had shot a man. Barreras then said he had been there and had shot him, and he would take them to the others, directing them to 118th Place, where they took defendant into custody. Defendant was asleep when they arrived, and when he asked what it was all about, he was told "(D)on't you

know?" Police then advised defendant they knew what had happened, knew a man had been shot and said they wanted the shotgun; when told that they would search for it, defendant said "Well, you'll find it anyhow. It is there under the bed," pointing to the foot of the bed he had slept in. The shotgun was disassembled under the mattress.

Officers took defendant, Barreras and the juvenile to the police department where their statements were taken. Defendant told the officers that he, Barreras and Trujillo had met around 6 or 6:30 p.m. and had driven around; that shortly after 2 a.m. they were around 182d and Western; that Barreras was driving, Trujillo was seated in the front and he was in the rear with the shotgun; that two men came out of a bar and one thumped the car; that they got out of the automobile and went back to where the men were; that he had the shotgun in his hand at the time; that they asked the men why they had hit the car and upon their denial, Barreras said "(T)hrow your money down," and defendant told them to put up their hands; that one threw money down and another got up and started toward him and he shot him; that he didn't know if the gun went off accidentally or deliberately, but he tried to shoot him in the leg; that after shooting Johnson defendant held the gun on Allsop and made him push the car, but after the car started it stuck in the mud; and that they abandoned it, going to Angie's house where they had her take Trujillo and Barreras home.

Appellant claims numerous trial court errors which raise the following issues: a capital offense may not be instituted by way of information; defendant was denied representation of counsel, the right to take the stand, and various other constitutional rights; the trial court erred in the admission of certain evidence; defendant was placed in double jeopardy and there was no evidence of a robbery involved in the killing of Johnson.

 The information, substantially following the form of indictment provided in section 951, Penal Code, and filed January 22, 1959, in the name of the People of the State of California (Pen. Code, § 809), was properly subscribed with the name of the District Attorney of Los Angeles County, William B. McKesson "by T. B. McNary, Deputy" (*People* v. *Griner*, 124 Cal. 19 [56 P. 625]; *People* v. *Etting*, 99 Cal. 577 [34 P. 237]); and is valid. (*People* v. *Turner*, 85 Cal. 432 [24 P. 857]). In any event, no objection to the signature of the deputy appearing on the pleading having been

614

made before the lower court, it is deemed waived (*People* v. *Fritz*, 54 Cal.App. 137 [201 P. 348]).

The information charged defendant with the murder of Johnson ''on or about the 21st day of December, 1958.'' Appellant claims a fatal variance between the date therein alleged and the date the evidence shows the victim died, December 25, 1958. Under ordinary circumstances the rule does not require the precise time at which the offense was committed to be stated in the information; it is sufficient if it is alleged ''to have been committed at any time before the finding or filing thereof (information), except where the time is a material ingredient in the offense'' (Pen. Code, § 955); and a pleading is sufficient if it can be understood therefrom ''that the offense was committed at some time prior to the time'' of the filing of the information (Pen. Code, § 959). Such a variance, therefore, is immaterial unless time is of the essence of the offense (*People* v. *Amy*, 100 Cal.App.2d 126 [223 P.2d 69]; *People* v. *Moranda*, 87 Cal. App.2d 703 [197 P.2d 394]); and an immaterial variance will be disregarded, particularly when it does not prejudice a substantial right of the defendant upon the merits (Pen. Code, § 960). The instant pleading fully, fairly and correctly informed the defendant of the criminal act with which he is charged. He could not well have been prejudiced by the variance because he neither presented a defense including alibi testimony or any element requiring a precise date to be alleged, nor intended to do so, insisting now only that he wanted to offer one of ''self-defense''—in fact, he refused to take the stand at the trial and presented nothing by way of defense. Defendant was in no way prevented by the variance from properly and adequately defending himself, and even had he testified on his own behalf or offered a defense, we fail to see how proof at the preliminary hearing (January 9, 1959) that defendant shot Johnson on December 21st and he died five days later, could in any way have misled him at the trial five months later, or placed him in danger of being twice put in jeopardy for the same offense (*People* v. *LaMarr*, 20 Cal.2d 705, 711 [128 P.2d 345]; *People* v. *Williams*, 27 Cal.2d 220 [163 P.2d 692]). The variance was neither of a substantial nature nor one that in any way misled defendant in preparing or presenting his defense. And there is no indication whatever that defendant was prejudiced in that respect. We deem the variance under these circumstances to be immaterial. (*People* v. *Collins*, 54 Cal.2d 57 [4 Cal.Rptr. 158, 351 P.2d 326].)

█▌ Again, defendant failed to call this matter to the attention of the trial court and "(A)n objection on the ground of variance between the pleading and the proof cannot be made for the first time on appeal where defendant was not injured or prejudiced by the variance (*People* v. *Yachimowicz,* 57 Cal.App.2d 375, 380 [134 P.2d 271].)" (*People* v. *Amy,* 100 Cal.App.2d 126, 128 [223 P.2d 69]).

█ Nor does appellant's claim that a capital case may not be instituted by way of information have merit. Citing the Fifth Amendment of the Constitution of the United States and article I, section 3, California Constitution, he argues that he has a right to be charged with murder by way of an indictment returned by the grand jury before which he could have presented "self-defense" testimony. Very early our courts held that "(T)he fifth and sixth Amendments of the Constitution of the United States are restrictive of the powers of the federal government and not restraints upon the states." (*People* v. *Wilson,* 26 Cal.App. 336, 338 [146 P. 1048].)

█ Under California law the state Constitution authorizes prosecution by way of information (art. I, § 8), which is implemented by section 809, Penal Code, prescribing the form of the pleading. This is not in contravention of the federal Constitution (*People* v. *Sullivan,* 101 Cal.App.2d 322, 329 [225 P.2d 645]); nor thereunder is a conviction for first degree murder, and a sentence of death on an information, illegal (*Hurtado* v. *California,* 110 U.S. 516 [4 S.Ct. 111, 27 L.Ed. 232]).

None of appellant's numerous contentions that he was denied various constitutional rights upon arraignment and thereafter, a copy of the charges against him, the right to take the stand in his own behalf and the right to obtain counsel; or that he was not advised of certain constitutional rights, are supported by the record; and reliance upon matters outside the record may not be considered on appeal (*People* v. *Hernandez,* 150 Cal.App.2d 398 [309 P.2d 969]; *People* v. *McKinney,* 152 Cal.App.2d 332 [313 P.2d 163]).

█ The record before us discloses—from preliminary hearing to sentence—an entirely normal proceeding, during which at all times before the lower courts defendant was represented by competent counsel of his own choice who advised him of his rights and actively participated in the trial; in fact, it is obvious that it was partly through counsel's efforts that the trial judge determined not to impose the death penalty. The record is silent concerning any proceedings had

prior to the preliminary hearing on January 9, 1959, and we must assume in the absence of any showing to the contrary that whatever were had were proper and defendant's rights were adequately protected. After January 9, 1959, the minutes of the lower court show that at all times defendant's counsel, David Ravin, was present and participated in the various hearings. At the preliminary hearing, Allsop, Officer Daniel, Angie Villalobes and Officers Gavin and Everley, the latter offering defendant's statement in evidence, testified at some length. The record shows extensive cross-examination by defendant's counsel and his active participation in the hearing. The minutes also show counsel's presence at all appearances thereafter, to and including the time of sentence. It is obvious from defendant's conduct that on the day set for trial, May 12, 1959, he had the benefit of his counsel's advice for he personally waived a jury trial and stipulated the matter could be heard on the transcript of the preliminary hearing, reserving the right to offer additional testimony. Thereafter, on May 19, 1959, the actual day of trial, defendant's counsel was asked if he would have any witnesses, to which he responded not "unless the defendant may want to take the stand"; then upon query by the trial judge he said "(D)efendant indicates he has testimony he would like to offer." The record here shows that the court then gave counsel time within which to talk with his client, and after consultation the former said "(Y)our Honor please, there will be no further testimony on behalf of the defendant." Neither at this point nor thereafter, until this appeal, did defendant object to this strategy or procedure, or in any way indicate his desire to take the stand. Furthermore, we can only assume, in the absence of any contrary showing, that the decision not to testify was made with defendant's full consent after consultation with and advice from his counsel. To say that it was alone counsel's decision would be pure speculation not justified in the absence of lack of objection thereto; but were it solely the result of an exercise of counsel's judgment we are not prepared to state that it constituted any mistake on his part. In any event, a mistake in judgment alone constitutes neither inadequate representation nor a denial of due process (*People* v. *Wein*, 50 Cal.2d 383, 411 [326 P.2d 457]). There is nothing in the record to show counsel was not competent, and "nothing to indicate that this attorney did not thoroughly investigate the matters in question and determine that nothing would be accomplished by producing further evidence in con-

nection therewith'' (*People* v. *Wilson*, 139 Cal.App.2d 762, 765 [294 P.2d 81]). David Ravin was counsel of defendant's own choosing, retained by him at the start, who remained with him through the entire proceedings. Defendant at no time before this appeal voiced any objection to, or dissatisfaction with, the adequacy of the representation afforded him. ''The handling of the defense by counsel of the accused's own choice will not be declared inadequate except in those rare cases where his counsel displays such a lack of diligence and competence as to reduce the trial to a 'farce or a sham' (citations). The record in this case does not even remotely approach such a situation.'' (*People* v. *Wein*, 50 Cal.2d 383, 410 [326 P.2d 457].)

As to appellant's other claims, for which also there is no support in the record, the lower courts gave counsel and defendant every opportunity to be heard, continued the matter several times at their request, and extended every courtesy to them. Both defendant and Barreras were fortunate the trial judge did not impose the death penalty—they showed no remorse for the man slain, fleeing from the scene, forcing the assistance of the other victim, leaving the wounded man unattended; and had the car not stalled in the mud they might never have been apprehended.

Appellant advances the argument that the trial court erred in permitting a police officer to testify to certain statements made to him by defendant upon his arrest; that the officer's testimony was hearsay; that he did not make the statements to the officer; and that had he made them ''there would be no reason for defendant (him) not to sign the same.'' It is elementary that, normally, otherwise proper admissions of a defendant made at the time of arrest fall within a long-established exception to the hearsay rule (*People* v. *Chan Chaun*, 41 Cal.App.2d 586 [107 P.2d 455]), and are generally admissible against the defendant as tending to prove his guilt. ''It is primarily within the province of the trial court to determine the admissibility of statements made by an accused from which an inference of guilty may be drawn, and a reviewing court will not reverse a conviction because of such admission unless its inadmissibility 'appears as a matter of law from the record presented' (*People* v. *Lehew*, 209 Cal. 336 [287 P. 337]).'' (*People* v. *Chan Chaun*, 41 Cal.App.2d 586, 590 [107 P.2d 455].) We find nothing in the record before us to justify a finding of inadmissibility.

Submitted with the transcript of the preliminary

hearing was the Sheriff's file containing the statement of Barreras, the defendant and Trujillo, taken from them December 21, 1958, by police officers at the Torrance police station after their arrest. Although the statement had been transcribed by the reporter and typewritten, it was not signed. Whether defendant actually made the statement attributed to him is, of course, a determination for the trier of the fact; the credibility of the officer's testimony is entirely for the trial judge. Considering the entire circumstances, including the statement itself, the lower court believed and accepted the testimony of Deputy Everley that after defendant's arrest the police actually took the statement from him and that it was freely and voluntarily given. The statement was reduced to writing but was not signed; and although the officer testified that neither he nor anyone else asked defendant to sign it, there appears in the record no reason why he was not asked to affix his signature to the typewritten copy, nor did defendant's counsel question the officer as to why this was not done. However, after taking the statement from him, the officer did ask defendant if "these things were right"; then, if there was anything he wanted to change or have taken out, to which he replied "No." There is nothing in the record to indicate that the defendant did not make the statements attributed to him to the police officers; and whether there was any "reason for defendant not to sign" the statement, at this time is entirely conjectural. The query gains no support from the record and if there was a reason other than he was not asked to sign it, there is no hint of it in the evidence.

His next contention is that defendant was placed in "double jeopardy" because he was sentenced to life imprisonment at one time and later to "natural life," a longer term. The record shows that the trial court, after it found defendant guilty and fixed the charge of murder in the first degree (and the minute order of May 19, 1959, so recites), in accord with section 190, Penal Code, decided not to impose the death penalty. At the time of sentence the court stated, after arraignment for judgment, "I have no other alternative, of course, except to deny probation and sentence you to state prison." Thereafter, on June 19, 1959, a minute order declared that the trial court having "found (it) to be murder of the first degree and fixed the penalty at life imprisonment" it is ordered defendant "be punished by imprisonment in the state prison for the term of his natural life."

Section 190, Penal Code, provides that every person guilty

of murder in the first degree shall suffer death "or imprisonment in the state prison for life," at the discretion of the judge. The terms, "natural life" and "life imprisonment," as used in this connection appear to us to be synonymous. Section 190 limits the punishment to confinement for life, and even if "natural life" could be construed to impose a longer term than "life," the latter would prevail. In any event, we find no "double jeopardy" question involved herein, since the imposition of penalty relates only to punishment; and it is clear that defendant was sentenced only once.

 Appellant's contention that in order to find him guilty of murder in the first degree the killing must have occurred in the perpetration of a robbery and the proof does not establish a robbery, lacks merit mainly because the evidence shows without question that the killing of Johnson was done during the time defendant and Barreras were robbing the two victims. Neither does the law bear out his contention. The information charged that defendant "did wilfully, unlawfully and feloniously and with malice aforethought murder Aaron William Johnson, a human being." Section 187, Penal Code, requires only a killing with malice aforethought and any murder perpetrated that is a "wilful, deliberate and premeditated killing" amounts to first degree (Pen. Code, § 189).

Much the same proposition raised by appellant herein was urged upon the court and rejected in *People* v. *Coefield*, 37 Cal.2d 865, 868 [236 P.2d 570] : "The evidence is clearly sufficient to support the verdict of murder in the first degree in view of the provisions of section 189 of the Penal Code that '(A)ll murder . . . which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is murder of the first degree.' Defendant argues that it must first be shown that there was a *murder*, not merely a killing, and that to have a murder there must be a malicious killing and an intent to kill. (See Pen. Code, § 187.) It has been held, however, that when one enters a place with a deadly weapon for the purpose of committing robbery, malice is shown by the nature of the attempted crime, and the law fixes upon the offender the intent which makes any killing in the perpetration of or attempt to perpetrate the robbery a murder of the first degree. (*People* v. *Bostic*, 167 Cal. 754, 760-761 [141 P. 380] ; see *People* v. *Milton*, 145 Cal. 169, 171-172 [78 P. 549] ; *People* v. *Olsen*, 80 Cal. 122, 126-127 [22 P. 125].) Other cases have pointed out that such a killing is murder of the first degree by force of section 189 of the

Penal Code, regardless of whether it was intentional or accidental . . ." The court in *People* v. *Turville,* 51 Cal.2d 620, stated at page 631 [335 P.2d 678] : "Murder which is perpetrated by means of torture, or committed in the perpetration or attempt to perpetrate robbery is murder in the first degree (Pen. Code, § 189) . . . a killing, intentional or otherwise, committed in the perpetration of one of the felonies enumerated in section 189 of the Penal Code constitutes murder of the first degree (*People* v. *Osborn,* 37 Cal.2d 380, 383 [231 P.2d 850] )."

 But the position of appellant factually appears to be entirely without merit for the evidence shows the killing was committed during the time defendant and Barreras were robbing two men. Both Allsop and Johnson were told by Barreras to throw their wallets on the ground; defendant then told them to keep their hands where he could see them and pointed the shotgun at both—Allsop having no wallet threw what change he had on the ground. Johnson, who had an injured back, sat down on the ground while they were talking and when he got up, holding his back, and walked towards them defendant shot him in the chest. Defendant later told the police that he did not know if the gun went off deliberately or accidentally, but that he had tried to shoot Johnson in the leg.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 3, 1960.